IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| U.S. Pastor Council, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 1:18-cv-849-RP |
| City of Austin; Sareta Davis, | § | |
| in her official capacity as Chair | § | |
| of the Austin Human Rights Commission, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' MOTION TO DISMISS**
**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, CHIEF, LITIGATION

*/s/ Paul Matula*
PAUL MATULA
State Bar No. 13234354
Paul.matula@austintexas.gov
HANNAH VAHL
State Bar No. 24082377
Hannah.vahl@austintexas.gov
City of Austin
Post Office Box 1546
Austin, Texas 78767-1546
Telephone (512) 974-2346
Facsimile (512) 974-131

**ATTORNEY FOR DEFENDANTS**

TABLE OF CONTENTS

I.          SUMMARY OF MOTION……………………………….…..................1

II.          BACKGROUND...............................................................................2

    A.   The Plaintiff ...................................................................... 2

    B.   The Ordinance ……………………………………………………………….2

    C.   Plaintiff's claims ............................................................... 6

III.          ARGUMENT AND AUTHORITY…………………………….…….……….8

    A.   The Complaint fails to plausibly plead standing.................................. 8

      1.   The standard of review for standing…..........……………………….................8

      2.   Organizations generally do not have associational standing to bring a Free Exercise claim…………….…………………………………….…….………....9

      3.   Plaintiff failed to plausibly plead that any of its 25 Austin church members have individual standing………………………………………………………… 11

        a.   Plaintiff has not named a single alleged member church with individual standing……………………………….…………………………………11

        b.   Plaintiff has not sufficiently alleged that Plaintiff has at least one member church which is subject to the Ordinance………………………………………………..12

        c.   Plaintiff has not sufficiently alleged that at least one of its members has suffered injury…………………………………………………………………………13

      4.   Plaintiff failed to plausibly plead that the litigation is germane to its purpose….15

    B.   The claims are not ripe........................................................... 16

      1.    The standard of review regarding ripeness…………………………………..16

      2.   The Complaint does not allege any of the 25 Austin member churches are covered by the Ordinance………………….…………………………………………...17

      3.   The Complaint does not allege any actual enforcement action…………………18

      4.   The Complaint does not meet the ripeness standard for a pre-enforcement challenge………………………………………………………………………18

5.      There is no hardship to Plaintiff in the absence of adjudication of the
        asserted claim ………………………………………………….…….…..……21

C.      Plaintiff failed to state a claim ........................................................................... 22

1.      Standard of review for failure to state a claim…………………….……………22

2.      Insufficient facts alleged to show the Ordinance applies to Plaintiff or its 25
        Austin church members........................................................................................23

3.      Clergy-hiring decisions by churches are exempt from the Ordinance.................23

4.      The Amended Complaint fails to allege a cause of action with regard to a church's
        non-clergy positions………………………………………………...………………25

        i.      The law regarding free exercise of religion claims………………………25
        ii.     Applying the law to the Ordinance……………………………………27

D.      The Court lacks jurisdiction over Plaintiff's TRFRA claim for failure to satisfy
        the pre-suit notice requirement……………………………………………………28

E.      The Court lacks jurisdiction over Plaintiff's TRFRA claim for failure to satisfy
        the pre-suit notice requirement……………………………………………….31

PRAYER…………………………………………………………………………....32

CERTIFICATE OF SERVICE………………………………………............................…33

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) ................................................ 20, 25

*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) ........................................ 29

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,* 627 F.3d 547, 550 n.2 (5th Cir. 2010) ................................................................................................................ 19

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) ................................................................................................................ 13

*Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006) ...................... 30

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ........................................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007) ...................................... 26

*Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2nd Cir.2006) ................................................................................................................ 19

*Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ................................................................. 30

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993) .......... 30

*City of Hialeah*, 508 U.S. at 533 ........................................................................................ 30, 31

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ........................................................ 18

*Cornerstone Christian Schools v. University Interscholastic League*, 563 F.3d 127, 133–35 (5th Cir. 2009) ................................................................................................................ 13

*Cornerstone Christian Schools*, 563 F.3d at 134 n.5 ................................................................ 14

*Davis v. FES*, 554 U.S. 724 (2008) ........................................................................................ 12

*Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) ..................................................................... 13

*Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595 (1990) ................................................................................................................ 30

*Foster*, 205 F.3d at 857 (5th Cir. 2000) ................................................................................ 20

*Harris v. McRae*, 448 U.S. 297 (1980) .................................................................................. 13

*HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 649–50 (Tex. 2007) ........................................................................................................................ 14

*Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) ............ 12

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 132 S.Ct. 694 (2012) ............................................................................................................................ 27

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) ............... 13, 19

*Individuals for Responsible Gov't, Inc. v. Washoe Cty. By & Through the Bd. of Cty. Comm'rs*, 110 F.3d 699, 702 (9th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997) .................................... 20

*Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 28–29 (5th Cir. 1974) ....................................... 21

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) .......... 26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ........................................................... 12

*McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1553 (Fed. Cir. 1986) .............................. 19

*Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986) .............. 21

*Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ............................. 13

*Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 n.8 (5th Cir. 2008) ....................... 23

*Morgan v. Plano Indep. School Dist.*, 724 F.3d 579, 588 (5th Cir. 2013) .................................... 32

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) ........... 12, 22

*Nat'l Rifle Ass'n v. BATFE*, 700 F.3d 185, 190-91 (5th Cir. 2012) .............................................. 18

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896–97 (5th Cir. 2000) ........................................ 20

*Patton v. Jones*, 212 S.W.3d 541 .................................................................................................. 27

*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n. 18 (1993) ................................................. 20

*Sabri v. United States*, 541 U.S. 600, 609 (2004) ........................................................................ 29

*Schroder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991) ....................................... 28

*Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) .................................................................. 23

*Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1288–89 (5th Cir. 1992) (en banc), *cert. denied*, 506 U.S. 866 (1992) .......................................................................................... 13

*Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006) .................................................. 22

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ……………………………………..14

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) .......................................... 18

*Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).... 21

*United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ........................... 21

**Statutes**

42 U.S.C. §1983.................................................................................................. 10, 35

42 U.S.C. §2000e-2 ................................................................................................... 7

Civil Rights Act of 1964 ....................................................................................... 7, 28

Tex. Govt. Code §311.034......................................................................................... 33

Tex. Civ. Prac. & Rem. Code §110.006(a) ................................................................. 15

Tex.Civ.Prac. & Rem. Code §110.006(a)(1-3) ........................................................... 32

Texas Religious Freedom Restoration Act .................................................................. 11

**Other Authorities**

*Austin City Code* §5-3-1.................................................................................. 7, 17, 31

*Austin City Code* §5-3-1(10) ................................................................................... 17

*Austin City Code* §5-3-1(A) ...................................................................................... 7

*Austin City Code* §5-3-6............................................................................................ 9

*Austin City Code*, §5-3-7......................................................................................... 22

Ordinance No. 75 0710-A........................................................................................... 6

**Rules**

Fed.R.Civ.P. 8(a)(2) & (3) ........................................................................................... 26

Fed.R.Civ.P. 8(d)(1) .................................................................................................... 26

Federal Rule of Civil Procedure 12(b) ...................................................................... 5, 6

**Constitutional Provisions**

Tex. Const. Art. 1, §6 ............................................................................................ 11, 30

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE ROBERT L. PITMAN:

Defendants the City of Austin and Sareta Davis, in her official capacity as chair of the Austin Human Rights Commission (together "City") request that the Court dismiss Plaintiff's First Amended Complaint, as authorized under Federal Rule of Civil Procedure 12(b). In support, the City would show the Court the following.

### I.     SUMMARY OF MOTION

This lawsuit presents a hypothetical controversy in search of a real-world dispute. There is none. Plaintiff U.S. Pastor Council, a Houston nonprofit corporation, sued the City over its employment discrimination ordinance ("Ordinance"). Plaintiff claims that some of its member churches, none identified, are subject to the Ordinance. The Complaint charges the Ordinance is unconstitutional on its face because it allegedly forces some of the unidentified Austin churches to hire as employees "women, practicing homosexuals or  transgendered people," none of whom the mystery churches allegedly would ever hire, owing to the religious beliefs of those churches on matters of sexuality and gender. The provisions of the Ordinance being challenged have been on the books for many years. But there is no allegation the Ordinance has been enforced, or is about to be enforced, against any of the unnamed Austin churches and no allegation that any of them have in fact been restricted in their hiring decisions.

The Complaint presents no live, justiciable controversy requiring adjudication. Plaintiff has no standing to proceed, either on its own behalf or on behalf of the unnamed Austin churches alleged to be members of the organization. The constitutional injuries the Austin church members allegedly face are speculative, hypothetical, unripe and unlikely to manifest themselves. In an effort to create a threatening picture, the pleading completely overlooks the ministerial exception,

which exempts a church's hiring decisions regarding its clergy. All of Plaintiff's claims should be dismissed, or in the alternative, partially dismissed, pursuant to Federal Rule of Civil Procedure 12(b).

## II.     BACKGROUND

### A.  The Plaintiff

According to the Amended Complaint, the U.S Pastor Council is a nonprofit corporation headquartered in Houston.   The corporation allegedly has around 1,000 member churches "including 25 in the city of Austin." *Amended Complaint* ¶3. In order to join the organization, "a pastor and its church must submit a membership application" and pay an annual fee. *Id*., ¶28.  The pleading recites a declaration of beliefs that the group's members must affirm, but none of those listed beliefs refer to hiring practices. *Id*., ¶29. The Amended Complaint alleges Plaintiff's Austin-based member churches, none of which are identified, believe the Bible is the Word of God and "rely on the Bible . . . for religious and moral guidance" and for that reason "will not hire practicing homosexuals or transgendered people as clergy." *Id*., ¶7.  The Complaint further alleges that because "many of these member churches" believe the Bible forbids a woman from serving as a senior pastor, they will not hire women for that job. *Id*., ¶9.

### B.  The Ordinance

Employment discrimination was banned by the Austin City Council more than four decades ago in 1975.  A copy of the July 1975 Ordinance No. 75 0710-A, which prohibited employment discrimination against individuals based on several protected classes, is attached to this Motion as **Ex. 1**.[1]  A decade earlier, the federal government led the way with passage of the

---

[1] The City requests that the Court take judicial notice of the contents of prior versions of the Ordinance.  *See* Fed. R. Evid. 201; *Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (city ordinances are proper subjects for judicial notice). The Court may do so without converting the motion to dismiss into a motion for summary judgment. See *Norris v. Hearst Trust,*

landmark Civil Rights Act of 1964.  That Act outlawed, among other things, employment discrimination based on race, color, religion, sex or national origin, in the section of the Act commonly referred to as Title VII.  42 U.S.C. §2000e-2.  Austin modeled its 1975 Ordinance on the protections outlined in Title VII and expressly included the protections against employment discrimination to cover an individual's sexual orientation, age and "physical handicap."[2]  In 1983, the State of Texas passed the Texas Commission on Human Rights Act, which was intended to provide rights and remedies against employment discrimination that are substantially equivalent to the protections established under federal laws.  The state Act is codified in Chapter 21 of the Texas Labor Code.

The policy underlying Austin's employment anti-discrimination Ordinance is "to bring about through fair, orderly and lawful procedures, the opportunity for each person to obtain employment without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, age or disability." *Austin City Code* §5-3-1(A)[3].  In passing the Ordinance, the Austin City Council recognized "the inalienable rights of each individual to work to earn wages and obtain a share of the wealth of this City through gainful employment" and that employment discrimination against individuals in Austin, based on the classes specified, "is detrimental to the

---

500 F.3d 454, 461 n. 9 (5th Cir.2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)).

[2] The federal government banned employment discrimination based on age with passage of the Age Discrimination in Employment Act of 1967 (ADEA). 29 U.S.C. §261, *et seq*.  More than twenty years later in 1990, the federal government banned employment discrimination based on an individual's disability with passage of the Americans with Disabilities Act (ADA). 42 U.S.C. §12101, *et seq*.  The ADA came 15 years after the City of Austin banned employment discrimination based on an individual's physical handicap.  **Ex. 1**.  A 2004 amendment to the Ordinance prohibited employment discrimination based on an individual's gender identity.  A copy of Ordinance No. 040610-7 is attached as **Ex. 2**.

[3] Chapter 5-3 of the Austin City Code, which includes the portions of the Ordinance being challenged, is attached to the Amended Complaint as "Exhibit 1."

health, safety and welfare of the inhabitants of the City." *Id.*, §5-3-1(B).  To that end, the Ordinance provides:

(A) An employer may not:

    (1) Fail or refuse to hire or discharge any individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, based on the individual's race, color, religion, sex, sexual orientation, gender identity, national origin, age, or disability; or

    (2) Limit, segregate, or classify an employee or applicant for employment in a way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the individual's status as an employee, based on the individual's race, color, religion, sex, sexual orientation, gender identity, national origin, age, or disability.  *Id.*, §5-3-4.

These prohibitions mirror those discriminatory employment practices barred by state and federal law.[4]  The texts of Title VII and Texas Labor Code Chapter 21 do not explicitly list "sexual

---

[4] The Texas Labor Code provides:

> Discrimination by Employer.  An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:  (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Labor Code § 21.051.

Title VII provides:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. §2000e-2(a).

orientation" or "gender identity" as protected classes.[5]  But the Equal Employment Opportunity Commission (EEOC), the federal agency charged with implementing and enforcing Title VII, has determined that employment discrimination against individuals on those grounds under some circumstances is covered by Title VII.[6]

Like Title VII and the state law, the Austin Ordinance establishes a complaint procedure to address violations.  An individual who believes there has been a violation of the Ordinance may submit a timely, written charge of discrimination to the City's Equal Employment/Fair Housing Office ("EEFH") for investigation. *Austin City Code* §5-3-6. Before proceeding with an investigation, the EEFH Office must determine that the charge adequately describes a violation of the Ordinance or federal and state employment discrimination laws, and notify the complainant if it does not.  *Id.*, §5-3-7.  If the EEFH Office accepts the charge, an investigator conducts an investigation to determine whether there is "reasonable cause to believe a charge is true." *Id.,*  §5-

---

As noted, the ADEA and the ADA also prohibit employment discrimination based on age and disability.

[5] Circuit courts—albeit not the Fifth Circuit—have increasingly recognized that Title VII protects against discrimination based on sexual orientation and gender identity. *See Equal Emp't Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.2d 560, 577 (6th Cir. 2018) ("Title VII protects transgender persons because of their transgender or transitioning status, because transgender or transitioning status constitutes an inherently gender non-conforming trait."); *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 122 (2d Cir. 2018) (en banc) ("We now conclude that sexual orientation discrimination is rooted in gender stereotypes and is thus a subset of sex discrimination."); *Hively v. Ivy Tech. Cmty. Coll. of Ind.*, 853 F.3d 339, 347 (7th Cir. 2017) (en banc) ("Any discomfort, disapproval, or job decision based on the fact that the complainant— woman or man—dresses differently, speaks differently, or dates or marries a same-sex partner, is a reaction purely and simply based on sex. That means that it falls within Title VII's prohibition against sex discrimination."); *but see Wittmer v. Phillips 66 Co.*, No. 18-20251, 2019 WL 458405, at *1 (5th Cir. Feb. 6, 2019) (reaffirming the Court's view that "Title VII does not prohibit discrimination on the basis of sexual orientation").

[6] *See e.g. Macy v. Dep't of Justice*, E.E.O.C. Appeal No. 0120120821 (April 20, 2012) (Discrimination against an individual because that person is transgender is discrimination because of sex under Title VII.); *see also Complainant v. Foxx,* E.E.O.C. Appeal No. 0120133080 (July 16, 2015) (Discrimination based on sexual orientation can be brought under Title VII even without any further showing of sex stereotyping.).

3-9.  If the EEFH Office finds reasonable cause, to believe the charge is true, the Office will attempt to resolve the alleged violation through a conciliation agreement between the complainant and respondent.  *Id.*, §5-3-12(A).  If no conciliation agreement is reached, the EEFH Office may refer a case to the City Attorney for prosecution in municipal court, "or for other civil prosecution as authorized by Chapter 21 of the Texas Labor Code."[7] *Id.*, 5-3-12(D).  Unlike Title VII and Chapter 21, the Ordinance does not establish a private cause of action that permits an aggrieved individual to sue the employer for a violation.

## C.  Plaintiff's claims

The Amended Complaint alleges Plaintiff's member churches in Austin "require church employees to live according to the Bible's teachings on matters of sexuality and gender" and for that reason they "will not consider practicing homosexuals or transgendered people for any type of church employment." *Amended Complaint,* ¶8.  The Amended Complaint alleges the Ordinance is facially invalid because it does not specifically "exempt church hiring decisions from its anti-discrimination laws." *Id.*, ¶14-16.   The pleading alleges Plaintiff's organization includes churches that are subject to the Ordinance because they are located in Austin and have the requisite number of employees, and that "those Austin-based churches *intend* to violate the Ordinance by categorically refusing to consider hiring women as senior pastor or practicing homosexuals or transgendered individuals for church employment, and "by requiring all church employees to refrain from homosexual behavior." *Id.*, ¶23-24.

Based on these allegations, the Amended Complaint asserts three causes of action.  First, Plaintiff makes a facial constitutional challenge to the Ordinance under 42 U.S.C. §1983, alleging

---

[7] There is no allegation in the Amended Complaint that the City Attorney has ever prosecuted anyone for a violation of the Ordinance, let alone a church.

the Ordinance violates the Free Exercise Clause of the First Amendment of the U.S. Constitution. Relatedly, Plaintiff alleges the Ordinance on its face violates art. 1, sec. 6 of the Texas Constitution's Bill of Rights.  That section, titled "Freedom of Worship", provides that all men have the "right to worship Almighty God according to the dictates of their own consciences" and prohibits a human authority from controlling or interfering with the rights of one's conscience in religious matters. Tex. Const. Art. 1, §6.  The Complaint does not specify how the Ordinance violates its rights under the Texas Constitution, but presumably Plaintiff is claiming that the free exercise of religion by its unnamed Austin member churches is impinged.[8]  Third, Plaintiff makes a claim under the Texas Religious Freedom Restoration Act (TRFRA)[9], alleging "Austin's refusal to exempt church hiring decisions from its anti-discrimination laws violates" the Act.  *Amended Complaint*, ¶16.

The Amended Complaint seeks injunctive and declaratory relief, specifically that the unnamed Austin member churches:

- have the right under the federal and state constitutions "to exclude practicing homosexuals and transgendered people as clergy and church employees" notwithstanding any federal, state, or local anti-discrimination laws to the contrary; *Amended Complaint*, ¶32, a & b.

- have a protected right under the TRFRA to exclude practicing homosexuals and transgendered people as clergy and church employees" notwithstanding any local anti-discrimination ordinance; *Id.,* c.

- have a right under the federal and state constitutions "to hire only men as clergy" notwithstanding any federal, state, or local anti-discrimination laws to the contrary; *Id.*, d & e.

- have a protected right under the TRFRA "to hire only men as clergy" notwithstanding any local anti-discrimination ordinance; *Id.*, f.

---

[8] The Texas and federal constitutional provisions regarding the exercise of religion are ordinarily treated as coextensive.  *See Tilton v. Marshall*, 925 S.W.2d 672, 677 n. 6 (Tex. 1996) (noting similarity between the free exercise guarantees under state and federal constitutions).
[9] TEX. CIV. PRAC. & REM. CODE, Ch. 110.

### III.     ARGUMENT AND AUTHORITY

**A.  The Complaint fails to plausibly plead standing.**

### 1.   The standard of review for standing.

Standing is a constitutionally-mandated component of subject matter jurisdiction.   The requirement that a party have "'standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 208–09 (5th Cir. 2011) (quoting *Davis v. FES*, 554 U.S. 724 (2008)).   The party invoking federal jurisdiction has the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*   A court must dismiss a case under Rule 12(b)(1) for lack of subject matter jurisdiction if it lacks the statutory or constitutional power to adjudicate the case.   *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The "irreducible constitutional minimum of standing" consists of three elements: (1) an injury in fact which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the complained-of conduct—that is, that is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan* 504 U.S. at 560–61. To prove an injury in fact sufficient "to raise a First Amendment facial challenge. . . a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by [law.]" *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008)(internal citations omitted).

The Amended Complaint alleges the U.S. Pastor Council has associational standing. *Amended Complaint*, ¶21. The elements of associational standing are that (a) the association's members would otherwise have standing to sue in their own right; (b) the interests the association seeks to protect are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). When standing is challenged on the basis of the pleadings, a court must accept as true all material allegations of the complaint and construe it in the plaintiff's favor. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). Nevertheless, the plaintiff claiming associational standing must still plausibly plead those elements, which requires sufficient factual allegations to support an inference of standing. *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J., sitting by designation) ("[W]here standing is at issue, heightened specificity is obligatory at the pleading stage. . . the complainant must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing.") (internal quotation omitted).

### 2. Organizations generally do not have associational standing to bring a Free Exercise claim.

Plaintiff cannot establish associational standing to bring a Free Exercise claim because those claims generally cannot be brought by associations and must be brought by the actual parties claiming deprivation of their rights under the First Amendment. *Harris v. McRae*, 448 U.S. 297 (1980); *Cornerstone Christian Schools v. University Interscholastic League*, 563 F.3d 127, 133–35 (5th Cir. 2009); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1288–89 (5th Cir. 1992) (en banc), *cert. denied*, 506 U.S. 866 (1992). For an association to have standing, the claim it asserts cannot depend on participation of the association's individual members. *See Hunt*, 432 U.S. at 343. Free Exercise claims generally do not meet this requirement—that is, that they do not

depend on individual participation by an association's members—because of the individualized nature of a Free Exercise claim itself, which generally requires an individualized showing of how government action burdens a particular practice of a sincerely held religious belief. In *Cornerstone Christian Schools*, for example, parents, their minor son, and Cornerstone Christian School all sued the University Interscholastic League and claimed infringement of free exercise, equal protection, and due process rights over its denial of Cornerstone Christian School's opportunity to apply for membership. *Cornerstone Christian School*, 563 F.3d at 130. The Fifth Circuit upheld the district court's dismissal of the school's Free Exercise claim on the ground that it lacked associational standing to raise that claim on behalf of the parents and its student, their minor child, because "[t]he involvement of parents and students. . . is essential to the resolution of the individualized element of coercion within this free exercise claim." *Cornerstone Christian School*, 563 F.3d at 133–34.

There is nothing about the present case which suggests that a departure from this general rule is warranted. As in *Cornerstone Christian School*, the Free Exercise claim asserted would require proof of the alleged burden on religious practice of Plaintiff's individual Austin member churches. Even when, as here, the claim is purely one for prospective relief, this principle regarding associational standing applies. *Cornerstone Christian Schools*, 563 F.3d at 134 n.5. Further, the same applies to Plaintiff's state law claims. The Texas constitutional claim is evaluated under the same legal standards as the First Amendment Free Exercise claim. *See HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 649–50 (Tex. 2007) ("We have treated the state and federal Free Exercise guarantees as coextensive absent parties' argument to the contrary.") Because the same issue—the individualized nature of proof of how a religious practice is allegedly burdened—is present for both Plaintiff's claims under Article 6, Section 1 of the Texas

Constitution and the TRFRA, Plaintiff similarly cannot meet the requirements for associational standing to bring those claims.

There is also no mechanism under the TRFRA that permits an association to give the required pre-suit notice on behalf of its mystery members, as Plaintiff has purported to do here. Under the TRFRA, a person may not bring suit unless "*the person* gives written notice to the government agency" at least 60 days in advance, specifying how "*the person's* free exercise of religion is substantially burdened . . ." TEX. CIV. PRAC. & REM. CODE §110.006(a) (emphasis added). The TRFRA does not contemplate that an organization may give pre-suit notice on its members' behalf, and there is no allegation any of the individual unnamed Austin church members ever provided the City the required pre-suit notice themselves. Associational standing to bring the TRFRA claim asserted has not been satisfied for that reason as well.

### 3. Plaintiff failed to plausibly plead that any of its 25 Austin church members have individual standing.

#### a. Plaintiff has not named a single alleged member church with individual standing.

The Amended Complaint failed to establish associational standing because it does not identify a single alleged member church of the U.S Pastor Council which is subject to the Ordinance. Associational standing requires that at least one member of the association have standing to sue in its own right. *Hunt*, 432 U.S. at 343. To meet that element, an association claiming standing must "identify [a] member[] who ha[s] suffered the requisite harm," and "plaintiff-organizations [are required] to make specific allegations establishing that at least one identified member has suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009). An association lacks standing "if it fails to adequately "allege[] that there is a threat of injury to any individual member of the association" and thus "fail[s] to identify even

one individual" member with standing. *Funeral Consumers All. Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012) (quoting *Nat'l Treasury Employees Union v. U.S. Dep't of the Treasury*, 25 F.3d 237, 242 (5th Cir. 1994)). Failure to identify, by name, at least one member with standing is fatal. *See Draper* 827 F.3d at 3 (affirming 12(b)(1) dismissal where advocacy group failed to identify in its complaint a single member of the group allegedly affected by the challenged regulation).

The Amended Complaint does not identify any alleged member of the U.S. Pastor Council, let alone any in Austin. Instead, all it alleges is that it has "Austin-based member churches" who are allegedly subject to the Ordinance and who allegedly intend to discriminate in their hiring at some unspecified time in the future. *Amended Complaint* ¶¶ 23–24. It does not identify the names of those churches, plead the specific number of their Austin employees, nor allege any supporting facts suggesting a practical likelihood that any anticipated clash between any such church's religious beliefs and the Ordinance will become real. The failure to specifically identify at least one alleged member church with standing to sue over the Ordinance warrants dismissal. *See Draper v. Healey*, 827 F.3d at 3.

> **b. Plaintiff has not sufficiently alleged that it has at least one member church which is subject to the Ordinance.**

Plaintiff has also not sufficiently alleged that it has at least one member church which is subject to the Ordinance. The pleading merely alleges that Plaintiff's 25 Austin member churches "include" churches covered by the Ordinance and recites the Ordinance's definition of "employer", which requires at least 15 employees over a requisite period of time. *Compare Amended Complaint*, ¶23 *with Austin City Code* §5-3-2(10). If, for example, the Austin church member's

employees work outside Austin, or all its employees are clergy, as opposed to non-clergy,[11] it is questionable as to whether the Ordinance applies to the church. The Amended Complaint does not allege how many, if any, of the 15 or more employees of those unidentified Austin churches actually work in Austin, or if any of those Austin employees are non-clergy.  This particular pleading deficiency underscores the contingent and hypothetical nature of the Free Exercise challenge described in the Amended Complaint, where apparently no employee has made such a complaint to the City and the City has undertaken no action to enforce the Ordinance against any church.  Without this additional factual detail, Plaintiff has failed to plead sufficient facts to meet its burden to avoid dismissal for lack of subject-matter jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235–36 (1990) (vacating portion of Fifth Circuit judgment where no petitioner had shown standing to challenge those particular provisions to which the judgment applied).[12]

> ### c.  Plaintiff has not sufficiently alleged that at least one of its members has suffered injury.

Even if one or more of the 25 Austin member churches did have the requisite number of Austin employees, the Complaint does not allege that at least one of them has the requisite injury-in-fact to support associational standing. The first element of associational standing is that "the association's members would otherwise have standing to sue in their own right." *See Hunt*, 432

---

[11] As discussed below, a church's decision in hiring clergy is exempt from the Ordinance under the ministerial exception.

 As discussed below, a church's decision in hiring clergy is exempt from the Ordinance under the ministerial exception.

12 If the Complaint is not dismissed outright for lack of standing at this time, the City requests leave of this Court to conduct limited discovery for the purpose of determining who these Austin churches are and whether their employees qualify them as a non-exempt "employer" under the Ordinance.  *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)(Trial court permitted limited discovery by defendant into the issue of jurisdictional immunity before deciding motion to dismiss).

U.S. at 343.  For an association's member to have standing to sue in its own right, the member must have an "an injury in fact, which is a concrete and particularized invasion of a legally protected interest." *Nat'l Rifle Ass'n v. BATFE*, 700 F.3d 185, 190-91 (5th Cir. 2012) (internal quotations omitted). That "injury in fact" must not only be concrete and particularized, but also actual or imminent, causally connected to the complained-of conduct, and redressable through a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). There is no allegation that any of the Austin church members have been confronted with the choice of hiring, or not hiring, an objectionable female, homosexual or transgendered individual for any job in Austin.  Nor is there an allegation that any of those Austin churches have confronted a situation where an Austin employee failed to "refrain from homosexual behavior" in violation of church teachings on sexuality, and the church then sought to fire them. *Amended Complaint* ¶24.

Nor is there any claim that such events are imminent, or even likely to occur. The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citation omitted). These requirements assure that there is "a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  The Complaint alleges no impending injury faced by any the 25 Austin church members.[13]

---

[13] Neither of Plaintiff's two claimed injuries-in-fact supports standing. First, Plaintiff claims that its Austin-based church members have "injury-in-fact" because they are threatened with prosecution and required to risk prosecution for "following the teachings of their religion." *Amended Complaint* ¶25.  But Plaintiff has not alleged facts supporting this perceived threat of prosecution. Next, Plaintiff claims injury-in-fact from allegedly being subject to the conflicting religious requirements of obeying civil authorities and following the Bible's teachings regarding homosexuality and the role of women in the church. *See Amended Complaint* ¶ 26.  But without any allegations supporting that this alleged conflict actually exists or is imminently likely to exist, this purported injury is simply an abstraction which does not show injury-in-fact. *Spokeo, Inc. v.*

**4.   Plaintiff failed to plausibly plead that the litigation is germane to its purpose.**

Plaintiff also did not sufficiently allege facts supporting associational standing because the Complaint failed to plausibly plead that the interests Plaintiff seeks to protect through this litigation are germane to its organizational purpose. For an association to have standing, the interests it seeks to protect through the litigation are germane to its purpose. *Hunt*, 432 U.S. at 343. This requirement is satisfied with "pertinence" between the litigation at issue and the organization's purpose. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,* 627 F.3d 547, 550 n.2 (5th Cir. 2010) (*quoting Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc*., 448 F.3d 138, 148 (2nd Cir.2006)).

The Complaint does not state what the U.S. Pastor Council's purpose is. Instead, Plaintiff has pleaded some of the principles  which the U.S. Pastor Council requires its pastors to affirm they agree with in order to become members of the group. *Amended Complaint* ¶28-29.[14] But the principles  of the U.S. Pastor Council are not the same as its organizational purpose. Plaintiff cannot sufficiently allege that the litigation is germane to the U.S. Pastor Council's purpose without alleging what that purpose is. *See McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1553 (Fed. Cir. 1986) (upholding dismissal of complaint for lack of standing where all alleged organization pleaded to show associational standing was that it was a 'nonprofit public interest law firm,' without indicating an alleged purpose of that firm which was germane to the litigation); *cf. Individuals for Responsible Gov't, Inc. v. Washoe Cty. By & Through the Bd. of Cty. Comm'rs*, 110 F.3d 699, 702 (9th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997) (affirming summary judgment

---

*Robins*, 136 S. Ct. 1540, 1548 (2016) (injury to support standing must be "concrete," must "actually exist," and must be "real," not "abstract").

[14] Even assuming that the U.S. Pastor Council's purpose is to advance the beliefs  listed at Paragraph 29 of its Amended Complaint, those tenets are insufficiently pertinent to the litigation and do not directly concern the relationship between churches and their employees.

that nonprofit plaintiff lacked associational standing where plaintiff failed to specify its members and the organization's purpose; "[a]bsent both purpose and members, it lacks any standing to sue").

## B.  The claims are not ripe

### 1.  The standard of review regarding ripeness.

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n. 18 (1993).  Its "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Determining whether a claim is ripe for judicial review requires the evaluation of (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. Relevant considerations in determining ripeness include whether further factual development would assist in the resolution of the issue and whether the parties risk enforcement without a resolution of the claim. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014)

Applying the ripeness doctrine in the declaratory judgment context presents "a unique challenge." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896–97 (5th Cir. 2000). This is so because "declaratory judgments are typically sought before a completed 'injury-in-fact' has occurred. . . but still must be limited to the resolution of an 'actual controversy.'" *Foster*, 205 F.3d at 857 (5th Cir. 2000); see also 28 U.S.C. § 2201(a). If the controversy is "abstract or hypothetical," the declaratory judgment action is premature. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). Conversely, an actual controversy is present where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Middle*

*South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).  Even if the "actual controversy" requirement is satisfied, however, a district court retains broad discretion to decide or dismiss a declaratory judgment action. *See Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc*., 996 F.2d 774, 778 (5th Cir. 1993); *but see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (noting tension between such prudential considerations and a federal court's obligation to hear and decide cases within its jurisdiction).

**2.  The Complaint does not allege any of the 25 Austin member churches are covered by the Ordinance.**

As noted above, Plaintiff's claims are not ripe because the Complaint fails to plead sufficient facts—including where the  non-clergy employees of Plaintiff's alleged "Austin-based members" work -- to plausibly show that Plaintiff's alleged Austin-based churches are subject to the Ordinance. *See Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 28–29 (5th Cir. 1974) (no justiciable controversy where complaint failed to allege that association's member "are now, or ever will be," subject to the Florida law they challenged). Although Plaintiff recites the Ordinance's definition of "employer" and alleges that some of its Austin-based member churches fall within that definition, Plaintiff pleads no further factual detail concerning the number and location of its employees and their positions to affirmatively shown that its alleged Austin-based members are, in fact, subject to the Ordinance. Bare recitations of legal elements are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("labels and conclusions"; "formulaic recitation of the elements"; and "naked assertions devoid of further factual enhancements" all unavailing). Absent more specific allegations affirmatively showing the Ordinance's applicability, Plaintiff's challenges to the Ordinance are not ripe.

### 3. The Complaint does not allege any actual enforcement action.

Plaintiff's claims are also not ripe because there is no controversy of sufficient immediacy and reality to give rise to jurisdiction. There is no allegation that any of Plaintiff's Austin church members—or any church, for that matter—have been the subject of an enforcement action under the Ordinance for failing to hire female, homosexual and/or transgendered individuals for a job in Austin. There is also no allegation that any such individual has ever made a complaint under the Ordinance, that the complaint was deemed sufficient by the EEFH, that an EEFH investigator found reasonable cause to believe the charge was true, and that efforts at resolving the complaint had failed. Under the Ordinance, all of these steps are prerequisites to the potential of prosecution via a referral to the City Attorney. *Austin City Code*, §5-3-7, 8 and 12. In short, no enforcement action, or even an event that might lead to a potential enforcement action, is alleged in the Amended Complaint. Such events remain entirely conjectural and hypothetical, and are not fit issues for judicial determination.

### 4. The Complaint does not meet the ripeness standard for a pre-enforcement challenge

Although in some cases a plaintiff may make a pre-enforcement challenge to a law, the Amended Complaint alleges no such justiciable controversy such that this Court may adjudicate the claims as a pre-enforcement challenge. For a pre-enforcement claim to be justiciable, the plaintiff must allege both an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute" and "a credible threat of prosecution thereunder." *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006) (*quoting Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)). To meet the first element, a plaintiff must allege a "'serious [] interest in acting contrary to a [law.]" *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (*quoting Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 n.8 (5th Cir.

2008)). The second element—the credibility of a threat of prosecution—is determined by assessing "the practical likelihood that a controversy will become real." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). This requirement recognizes the critical distinction between actual and hypothetical controversies.

The Fifth Circuit recently analyzed the threat of prosecution sufficient to make a controversy justiciable, albeit in the standing context,[15] in *Seals v. McBee*, 898 F.3d 587, 590–93 (5th Cir. 2018). In that case, the plaintiff Travis Seals was arrested for violation of a Louisiana statute criminalizing "the use of violence, force, or threats" on a public officer or employee with intent to influence the officer's conduct in relation to his or her position. *Id.* at 590.  He then successfully sued to invalidate the statute on First Amendment grounds as unconstitutionally overbroad. *Id.* In upholding the district court judgment invalidating the statute, the Fifth Circuit rejected the State of Louisiana's argument that Seals lacked standing to challenge the statue because, while he had been arrested under it, the DA had not charged him and "expressly disavowed bringing such charges." *Id.* at 592. Instead, the Fifth Circuit held that Seals had standing notwithstanding the DA's position because he actually violated the statute, was legally subject to prosecution, because other enforcement actions under it were being pursued, and Seals "because the DA can change his mind and prosecute him. . . [He] is not required to live under the specter of prosecution for violating a plainly unconstitutional law with nothing more than a non-committal promise as protection." *Id.* at 592–93.[16]

_____

[15] The standing and ripeness inquiries tend to overlap, especially when the injury alleged is not actual but merely threatened. *See Warth v. Seldin,* 422 U.S. 490, 499 n.10 (1975) ("The standing question. . . bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention.").

[16] Notably, a number of Fifth Circuit judges would have held that even those facts were insufficient to support standing. *See Seals v. McBee*, 907 F.3d 885, 886 (5th Cir. 2018) (Jones, J., dissenting from denial of rehearing en banc) (opining that Seals lacked a credible future threat of prosecution

Here, there are no allegations approaching those deemed sufficient to support a justiciable controversy in *Seals*. Plaintiff still has not plausibly pleaded the Ordinance's applicability and has instead simply recited the elements of the Ordinance without alleging further facts. Further, as discussed more below, there is no plausible allegation that certain conduct Plaintiff claims the Ordinance prohibits—specifically with regard to hiring objectionable individuals as clergy—is actually prohibited. There is no credible threat of prosecution, particularly as to the hiring of clergy, where the Ordinance specifies that its interpretation is guided by Title VII, which courts hold contains a ministerial exception. *See Cruz v. Abbot*, 849 F.3d 594, 604 (5th Cir. 2017) (holding plaintiffs lacked standing where they were unable to show a credible threat of prosecution for renting to undocumented individuals under harboring of illegal aliens statute because "there is no reasonable interpretation by which merely renting housing or providing social services to an illegal alien constitutes harboring that person from detection).[17]  For there to be a violation to prosecute, the EEFH would have to conclude  the ministerial exception did not apply to a complainant's employer, that is, the job the individual applied for and did not get was *not* a clergy position. Furthermore, for a violation the EEFH would need to determine that the explicit exemptions set out in the Ordinance did not apply to the situation.[18]   Even if a violation was found, the EEFH office and City Attorney would still have discretion as to whether to refer the matter for prosecution. *Austin City Code* §§ 5-3-12 (D). There is no allegation that the EEFH has ever

---

given DA's position; the fact that he had actually been arrested for violation of the statute was not sufficient).

[17] For this same reason, Plaintiff has not met its burden to plead an "intention to engage in a course of conduct arguably affected with a constitutional interest, *but proscribed by [law]*." *Speaks*, 445 F.3d at 399 (emphasis added).

[18] For example, the Ordinance provides that a religious corporation, such as a church, may choose "to hire and employ individuals of a particular religion" to perform the corporation's work.  *Austin City Code* §5-3-15(C).

investigated any such complaint, much less referred one for prosecution, against any church. Without more, Plaintiff has not satisfied its burden of alleging facts affirmatively establishing this Court's jurisdiction. *See Hoyt v. City of El Paso, Tex.*, 878 F. Supp. 2d 721 (W.D. Tex. 2012) (dismissing pastor and church's constitutional claims for lack of justiciable controversy where, among other deficiencies, they failed to allege that the conduct they sought to engage in was actually prohibited).

    **5.** **There is no hardship to Plaintiff in the absence of adjudication of the asserted claims.**

There is also no allegation that Plaintiff's alleged Austin church members have suffered, or would even be likely to suffer, any harm in the absence of the adjudication of these claims. *Abbott Labs.*, 387 U.S. at 152–53 (to constitute hardship, impact of law must be "sufficiently direct," resulting in an "immediate and significant change in the plaintiffs' conduct"). Austin's Ordinance has explicitly prohibited employment discrimination against individuals because of their sexual orientation for nearly 50 years and has banned discrimination based on gender identity since 2004. Despite the fact the Ordinance was passed decades ago, there is no allegation that any of the Plaintiff's Austin member churches have *at any time* been unable to fire, or refused to hire, any practicing homosexuals or transgendered individuals owing to their allegedly objectionable behavior, or that any such applicants even applied for a job at their church. Nor is there any allegation that a female ever applied or was turned down for a job as senior pastor for those Austin churches that are religiously opposed to that practice. There is no allegation that any employee of those Austin churches was ever fired for engaging in homosexual behavior, or that the church was prevented from firing such an employees lest their personnel action violate the Ordinance. Not surprisingly, there is no allegation the Austin members churches have suffered hardship or interference in their day to day operations or religious practices owing to their adherence to the

Ordinance, if it is even applicable to them.  The scarcity of such facts in the pleading emphasizes the contingent and hypothetical nature of the claims asserted.  No jurisdiction exists for this court to decide Plaintiff's speculative claims for relief.  For this Court to entertain litigation based on events that have not come to pass, and are unlikely in the future, would be premature and inadvisable.  Dismissal of these unripe claims poses no hardship to the Plaintiff or its Austin church members.

**C.      Plaintiff failed to state a claim**

**1.  Standard of review for failure to state a claim.**

Under the procedural rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and a demand for the relief sought.  Fed. R. Civ. P. 8(a)(2) & (3).  Each factual allegation in the pleading must be simple, precise and direct. Fed. R. Civ. P. 8(d)(1). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege factual matters, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility requirement means that a plaintiff must plead a comprehensible legal theory and must allege facts, not conclusions, establishing every essential element of the legal theory on which the claim for relief is based.  *Ashcroft*, 556 U.S. at 678.  On a motion to dismiss, the court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor. However, conclusory allegations or legal conclusions are not entitled to the assumption of truth, and a court may disregard them.  *Id.*  This determination depends upon the context and requires the court to draw upon its own experience and common sense. *Id.*   The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the

motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**2. Insufficient facts alleged to show the Ordinance applies to Plaintiff or its 25 Austin church members.**

The U.S. Pastor Council is based in Houston.  Judging from the group's  pleading and website, it has no offices, board members or employees in Austin.  There is no allegation the organization is a church, that it hires clergy as employees, or that it is an "employer" subject to the Ordinance.  As noted above, there are insufficient facts alleged to establish that any of Plaintiff's 25 Austin church members have the sufficient number of Austin employees to be considered "employers" subject to the Ordinance. Therefore, the Complaint does not allege facts from which the Court could plausibly infer that Plaintiff or any of the 25 unnamed Austin church members are subject to the Ordinance, or that their constitutional rights to freely exercise their religion are impinged.

**3. Clergy-hiring decisions by churches are exempt from the Ordinance.**

Even if one or more of the 25 Austin member churches had the requisite number of Austin employees to be considered "employers" under the Ordinance, it would not prohibit those churches from refusing to hire women, practicing homosexuals or transgendered people as clergy.  That is because of the "ministerial exception" recognized by state and federal courts. *See Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 170 (5th Cir. 2012); *Patton v. Jones*, 212 S.W.3d 541, 547 (Tex. App.—Austin 2006, pet. denied). In *Hosanna-Tabor*, an ADA case, the Supreme Court held the First Amendment's Establishment and Free Exercise clauses bar suits brought on behalf of ministers against their churches where statutorily-prohibited employment discrimination is

alleged.  565 U.S. at 188-90.  The so-called ministerial exception exempts clergy hiring decisions by churches from employment discrimination statutes, including the Ordinance.

The ministerial exception has been applied to federal employment discrimination laws in Texas since before the Ordinance was enacted.  *See McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir. 1972) (Ministerial exception exempts employment relationship between churches and their ministers from Title VII).  Section 5-3-3 of the Ordinance, entitled "Interpretation and Designation" directs that:

> In construing this chapter, it is the intent of the city council that the courts shall be guided by the rules and regulations of the EEOC and the Federal Court interpretations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act of 1967, and Chapter 21 (Employment Discrimination) of the Texas Labor Code.

This intent in the Ordinance is comparable to that set out in Texas Labor Code §21.001.  *Schroder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991) ("The expressed purpose of the Texas Commission on Human Rights Act is the execution of the policies embodied in Title VII.")

The Amended Complaint alleges there are "no exceptions" in the Ordinance to church hiring decisions that discriminate based on sex, sexual orientation and gender identity.  *Amended Complaint*, ¶13. That conclusory allegation is incorrect. The ministerial exception, which is discussed in the *Hosanna-Tabor* case and related authority interpreting federal employment discrimination statutes, guides the interpretation of the Ordinance consistent with the City Council's expressed intent.  Although the ministerial exception is not explicitly spelled out in the text of the Ordinance, that is not required.  The ministerial exception does not appear in the text of Title VII, Chapter 21 of the Texas Labor Code, the ADA or the ADEA, either.  But it is the law. Furthermore, as the pleading acknowledges, the Ordinance expressly exempts religious corporations, such as churches, to the extent they "hire and employ individuals of a particular

religion to perform work connected with the activities of the corporation." *Austin Code* §5-3-15(C).

The Amended Complaint does not allege the City has ever interpreted or enforced the Ordinance in a manner that is inconsistent with the ministerial exception. Owing to the ministerial exception, the Ordinance would not be enforced against the Plaintiff's Austin church members if they refused to hire an individual for a clergy position based on the individual's sex, sexual orientation or gender identity, even if such a complaint were made to the EEFH Office. The pleading fails to state a claim in that regard.

### 4. The Amended Complaint fails to allege a cause of action with regard to a church's non-clergy positions.

#### i. The law regarding free exercise of religion claims.

To the extent the Amended Complaint alleges a theory that the Ordinance violates the rights of the 25 Austin church members to freely exercise their religion with regard to the hiring of *non-clergy* employees, that claims should be dismissed. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 609 (2004) (internal quotation marks and brackets omitted). Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither "anticipate a question of constitutional law in advance of the necessity of deciding it" nor "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). Facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution, and courts "must keep in mind that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people."

*Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006).  These imperatives are critical in this case, where the circumstances presenting a conflict between a law and a religious belief have not manifested themselves in a real-world dispute.

The First Amendment's Free Exercise Clause, applicable to the states through the Fourteenth Amendment, prohibits state and local governments from making any "law respecting an establishment of religion, or prohibiting the free exercise thereof.  U.S. Const. amends. I, XIV; *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). The Free Exercise Clause is limited to "protecting the *free exercise* of religion," and is not the general protector of religion or religious beliefs. *Parker v. Hurley*, 514 F.3d 87, 103 (1st Cir. 2008).  Similarly, the Texas Constitution's Bill of Rights, article 1, section 6, entitled "Freedom of Worship," provides that all men have the "right to worship Almighty God according to the dictates of their own consciences" and prohibits a human authority from controlling or interfering with the rights of one's conscience in religious matters. Tex. Const. Art. 1, §6.

Laws that burden the free exercise of religion, as opposed to neutral, generally-applicable laws incidentally burdening religious exercise, must be narrowly tailored to advance a compelling government interest.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993).  A law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.  *Id. (*citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990)).  A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernible from the language or context. *See City of Hialeah*, 508 U.S. at 533. Thus in analyzing a plaintiff's free exercise claim, the court must first determine the neutrality and

applicability of an ordinance before the alleged restriction on the free exercise of religion can be examined.

      **ii.   Applying the law to the Ordinance.**

The text of the Ordinance is facially neutral with regard to religion. *See City of Hialeah*, 508 U.S. at 533 ("[T]he minimum requirement of neutrality is that a law not discriminate on its face."). A law is not facially neutral if it "refers to a religious practice without a secular meaning discernable from the language or context." *Id*. On its face, the Ordinance does not establish a religion or prohibit any Austinite from freely practicing their chosen religion. The Complaint points to no "religious practices" referenced in the Ordinance, and no religious practice is alleged to be targeted, either overtly or covertly, by the Ordinance. There is no indication, or allegation, that the objective of the Ordinance's restrictions regarding discriminatory employment practices based on an individual's sex, sexual orientation or gender identity is to infringe upon the free exercise of an employer's religion. Therefore, the Ordinance is facially neutral.

The Ordinance is generally applicable, with exemptions noted in the text and common law. The City Code section containing the Ordinance states at the outset that it is aimed at prohibiting certain discriminatory hiring and employment practices in the City of Austin. *Austin City Code* §5-3-1. The policy the Ordinance was intended to further is based on "the recognition of the inalienable rights of each individual to work to earn wages and obtain a share of the wealth of this City through gainful employment" and that ". . . the denial of such rights [through prohibited discrimination] is detrimental to the health, safety and welfare of the inhabitants of the City." *Id*., §5-3-1(B). The policy imperatives articulated in the Ordinance, namely the recognition that *all* Austinites have the right to make a living through gainful employment, are of legitimate concern to a municipality. Those policies apply to all individuals and not according to their religious

beliefs.  With regard to the church's hiring of non-clergy employees, the Ordinance does not burden any religious practice identified in the Complaint.

On its face, the challenged Ordinance is a general law that applies to all non-exempt employers in Austin, as that term is defined. Even if that were not the case, no employers are targeted based on their religious beliefs, and there are no contrary allegations in the Complaint. The Ordinance is aimed at any discriminatory acts, as listed, by non-exempt Austin employers, whether the act is motivated by religious beliefs or something else. Because religious beliefs do not excuse compliance with an otherwise valid law prohibiting conduct which the City is free to regulate, *see Smith*, 494 U.S. at 878–79, Plaintiff has failed to state a Free Exercise claim with regard to the hiring of non-clergy positions.

**D.     The Court lacks jurisdiction over Plaintiff's TRFRA claim for failure to satisfy the pre-suit notice requirement.**

Under the TRFRA, a government agency generally may not substantially burden a person's free exercise of religion. TEX. CIV. PRAC. & REM. CODE §110.003(a). A person may not bring an action to assert a TRFRA claim  "unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested: (1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's authority; (2) of the particular act or refusal to act that is burdened; and (3) of the manner in which the exercise of governmental authority burdens the act or refusal to act."  *Id.*, §110.006(a)(1-3).  These notice requirements are jurisdictional and are strictly construed for good reason. *See Morgan v. Plano Indep. School Dist.*, 724 F.3d 579, 588 (5th Cir. 2013) (The TRFA requires timely pre-suit notice in the form of certified mail, return receipt requested in order to waive a government agency's immunity.) This pre-suit notice requirement serves the salutary purpose of notifying the government exactly what the person is complaining about before

subjecting the government to litigation.   As noted in *Morgan*, under state law "statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements against a governmental entity," and when they are not met the government's immunity from suit is not waived. *Id.*, *citing* TEX. GOV'T. CODE ANN. §311.034 (Vernon 2013).  The TRFRA waives a municipality's sovereign immunity to suit, but only if the mandatory notice requirements are met. TEX. CIV. PRAC. & REM. CODE, §110.008(a) ("Subject to Section 110.006, sovereign immunity to suit . . . is waived and abolished").

Plaintiff's pre-suit notice letter to the City failed to meet the TRFRA's strict requirements. First, the Act specifies that "a *person* may not bring action" unless "the *person*" timely gives written notice that "the *person's*" free exercise of religion is substantially burdened and how.  TEX. CIV. PRAC. & REM. CODE §110.006(a) (emphasis added). Plaintiff's letter, attached as an exhibit to its pleading, did not describe *any burden* on the free exercise of the U.S. Pastor Council's religion, let alone a substantial burden.   There was no claim, then or now, that the U.S. Pastor Council was an Austin "employer" covered by the Ordinance. The letter makes only one oblique reference in the sixth paragraph to Plaintiff's "member churches in Austin" but says nothing about who those churches are, their religious beliefs or how the Ordinance substantially burdens their First Amendment right to freely exercise them in matters of hiring and firing. *Amended Complaint*, Ex. 5.  Who those Austin church members are, and their particular objections to how the Ordinance adversely affects them, remain mysteries to this day.  Plaintiff's letter made no effort to illuminate the matter.  The letter does not even appear to have been written directly on behalf those unknown Austin church members, but for "all churches."[19]  As a practical matter, the letter failed to give the

---

[19] In its introduction, the U.S. Pastor Council's letter states, "We write not only on behalf of ourselves and our organization, but on behalf of all churches . . . that object to these lifestyles and behaviors."  *Amended Complaint*, Ex. 5 (emphasis added).

City notice that there were any actual churches in Austin whose religious practices were impacted by the Ordinance.

The black letter notification requirements that a "person" must meet to bring a TRFRA suit are clear.  In enacting the TRFRA's pre-suit notice requirements, it is unlikely the legislature intended that the "person" permitted to bring suit could be someone other than the "person" whose religious freedoms are being substantially burdened. *See* TEX. GOV'T CODE §311.011(a) (stating that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"); *see also Duvall v. Tex. Dep't of Human Servs.*, 82 S.W.3d 474, 480 (Tex. App. – Austin 2002, no pet) (Absent language indicating a contrary intent, a word or phrase used in different parts of a statute is presumed to have the same meaning throughout.)  This is especially true for a statutory cause of action footed on the alleged deprivation of a person's constitutional right to freely exercise *their* religion, where the requirements of standing underscore those imperatives.  *See e.g. Cornerstone Christian Schools*, 563 F.3d at 135 (School had no standing where "[t]he involvement of parents and students . . . is essential to the resolution of the individualized element of coercion within this free exercise claim.")

Furthermore, Plaintiff's notice letter was incomplete and described only the alleged burden imposed on churches when hiring clergy.[20]  In the introductory paragraph, the U.S. Pastor Council notified the City that the Ordinance "violates state law because it fails to protect the autonomy and religious freedom of churches . . .  that hold a sincere religious objection to homosexuality, transgender behavior, and women *serving as clergy*." *Amended Complaint*, Ex. 5, ¶1(emphasis

---

[20] As noted, under the ministerial exception the Ordinance does not apply to qualifying Austin churches in connection with hiring clergy and for that reason does not "substantially burden" the free exercise of religion by any of Plaintiff's Austin member churches when they hire employees for clergy positions.

added). The letter refers multiple times to churches who object to hiring those individuals "as clergy."[21]  No notice is given that the Ordinance imposes any burden on the religious freedom of churches when hiring *non*-clergy employees.  No description is given of "the manner in which [the Ordinance] burdens the act or refusal to act" in that regard, as is required. TEX. CIV. PRAC. & REM. CODE §110.006(1)(1- 3).  Although the letter refers in the fifth paragraph to the selective hiring practices of Christian "non-profits" and "businesses," the letter treats those entities as something distinct from "churches."  The pre-suit letter, to the extent it notified the City of any complaint at all, notified the City only of a complaint regarding a church's hiring of clergy.

Close to the hole is not sufficient when the pre-suit notice requirements are as clear as those in the Act.  If there is doubt as to whether Plaintiff's notice letter was adequate to waive the City's immunity, then the issue must be resolved in the City's favor. *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp*., 283 S.W.3d 838, 844 (Tex.2009) (As a general rule, ambiguity as to waiver is resolved in favor of retaining immunity.) Alternatively, the Court should not exercise its supplemental jurisdiction to hear this state law claim when no federal question jurisdiction exists.

**E.    The Complaint against Davis in her official capacity fails to state a claim.**

Suits to redress deprivations of federal civil rights by persons acting "under the color of any [state] statute, ordinance, regulation, custom or usage" are authorized under 42 U.S.C. §1983. Defendant Sareta Davis is the chair of the City of Austin's Human Rights Commission ("Commission"). The Complaint does not allege any facts establishing that Davis or the Commission she chairs have taken, or will take, any action against Plaintiffs with regard to the

---

[21] The letter recites the same example repeated in the pleadings, that the Ordinance requires Catholic churches "to hire women as priests."  Of course the Ordinance would require no such thing, owing to the ministerial exception, and there is no indication that any  Catholic churches are among the local Austin members whose interests the U.S. Pastor Council purports to represent in this lawsuit.

challenged Ordinance. Apart from a passing reference in Paragraph 5, the pleading alleges nothing at all about the Commission.  Specifically, the Complaint does not allege why the Commission's chair as a party defendant, along with the City, is necessary for the Court to grant the relief Plaintiff seeks.  The claim against Davis should be dismissed.

**PRAYER**

Defendants pray that the Court grant their motion to dismiss, and that the claims asserted against them be dismissed without leave to amend.  Defendants respectfully request such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, CHIEF, LITIGATION

*/s/ Paul Matula*
PAUL MATULA
State Bar No. 13234354
Paul.matula@austintexas.gov
HANNAH VAHL
State Bar No. 24082377
Hannah.vahl@austintexas.gov
City of Austin – Law Department
Post Office Box 1546
Austin, Texas 78767-1546
Telephone (512) 974-2346
Facsimile (512) 974-131

**ATTORNEY FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

This is to certify that I have served a copy of the foregoing on all parties or their attorneys of

record, in compliance with the Federal Rules of Civil Procedure, this 19th day of February, 2019.

**Via CM/ECF:**
Jonathan F. Mitchell
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, TX 78701
(512) 686-3940
Fax: (512) 686-3941
Email: jonathan@mitchell.law

**ATTORNEYS FOR PLAINTIFF**

*/s/ Paul Matula*
PAUL MATULA
Assistant City Attorney

EXHIBIT 1

4 + 2

CITY OF AUSTIN, TEXAS

## ORDINANCE NO. 75 0710-A

AN ORDINANCE DECLARING THE POLICY OF THE CITY TO BE IN FURTHERANCE OF THE
RIGHT OF EACH INDIVIDUAL TO OBTAIN EMPLOYMENT WITHOUT REGARD TO RACE, COLOR,
RELIGION, SEX, SEXUAL ORIENTATION, NATIONAL ORIGIN, AGE, OR PHYSICAL HANDICAP;
DEFINING TERMS; PROHIBITING CERTAIN UNLAWFUL EMPLOYMENT PRACTICES; PROVIDING
CERTAIN EXEMPTIONS; ESTABLISHING A PROCEDURE FOR THE HANDLING OF COMPLAINTS;
PROVIDING FOR REFERRAL OF CASES TO THE CITY ATTORNEY; FORBIDDING INTIMIDATION;
PROVIDING FOR RULE MAKING AUTHORITY OF THE COMMISSION; PROVIDING FOR SEVERA-
BILITY; PROVIDING PENALTIES; SUSPENDING THE RULE REQUIRING THE READING OF
ORDINANCES ON THREE SEPARATE DAYS; AND DECLARING AN EMERGENCY.


BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF AUSTIN:


SECTION 1.  Declaration of Policy.

A.  It is hereby declared to be the policy of the City of Austin to
bring about through fair, orderly and lawful procedures, the opportunity for
each person to obtain employment without regard to race, color, religion, sex,
sexual orientation, national origin, age or physical handicap.

B.  It is further declared that this policy is established upon the
recognition of the inalienable rights of each individual to work to earn wages
and obtain a share of the wealth of this City through gainful employment; and
further that the denial of such rights through considerations based upon race,
color, religion, sex, sexual orientation, national origin, age or physical
handicap is detrimental to the health, safety and welfare of the inhabitants
of the City of Austin and constitutes an unjust denial or deprivation of such
inalienable rights which is within the power and the proper responsibility of
government to prevent.

SECTION 2.  General Definitions.

A.  "Commission" means the City of Austin Human Relations Commission;

B.  "Director" means the Director of the Human Relations Commission
or authorized assistant;

C.  The term "person" includes one or more individuals, labor unions,
partnerships, associations, corporations, legal representatives, mutual companies,
joint-stock companies, trusts, unincorporated organizations, trustees, trustees
in bankruptcy, or receivers, or any other legal or commercial entity.

D.  "Physically handicapped" means any person who, because of accident,
illness, congenital condition or other condition of health, experiences any im-
pairment in sight, hearing, touch, taste, smell, motor skills or appearance.

E.  "Religion" includes all aspects of religious observance and prac-
tice, as well as belief, unless an employer demonstrates inability to reasonably
accommodate to an employee's or prospective employee's religious observance or
practice without undue hardship on the conduct of the employer's business.

443

CITY OF AUSTIN, TEXAS

SECTION 3.   Definitions.

A.  The term "employer" means a person who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under Section 501(c) of the Internal Revenue Code of 1954, (3) the State of Texas, agencies thereof and political subdivisions thereof.  The employees of the City of Austin are included within the scope of this ordinance.

B.  The term "employment agency" means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

C.  The term "labor organization" means a labor organization and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

D.  The term "employee" means an individual employed by an employer. Employee shall not include any person elected to public office of the City by the qualified voters thereof.

SECTION 4.   Prohibitions:  Unlawful Employment Practices.

A.  It shall be an unlawful employment practice for employers:

(1)  To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, sexual orientation, national origin, age or physical handicap; or

(2)  To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee, because of such individual's race, color, religion, sex, sexual orientation, national origin, age or physical handicap.

B.  It shall be an unlawful employment practice for an employment agency:

(1)  To fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of race, color, religion, sex,

CITY OF AUSTIN, TEXAS

sexual orientation, national origin, age or physical handicap, or to classify or refer for employment any individual on the basis of race, color, religion, sex, sexual orientation, national origin, age or physical handicap.

C.  It shall be an unlawful employment practice for a labor organization:

(1)  To exclude or to expel from its membership, or otherwise to discriminate against, any individual because of race, color, religion, sex, sexual orientation, national origin, age or physical handicap.

(2)  To limit, segregate, or classify its membership or applicants for membership or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, sexual orientation, national origin, age or physical handicap.

(3)  To cause or attempt to cause an employer to discriminate against an individual in violation of this section.

D.  It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual because of race, color, religion, sex, sexual orientation, national origin, age or physical handicap in admission to, or employment in, any program established to provide apprenticeship or other training.

E.  It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor management committee indicating any preference, limitation, specification, or discrimination based on race, color, religion, sex, sexual orientation, national origin, age or physical handicap except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, sexual orientation, national origin, age or physical handicap when religion, sex, sexual orientation, national origin, age or physical handicap is a bona fide occupational qualification for employment.

F.  It shall be an unlawful employment practice for an employer to discriminate against any employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs,

to discriminate against any individual, or for a labor organization to dis-
criminate against any member thereof or applicant for membership, because
the individual has opposed any practice, made an unlawful employment practice
by this ordinance, or because the individual has made a charge, testified,
assisted, or participated in any manner in an investigation, proceeding, or
hearing under this ordinance.

SECTION 5.  Employment Practices which are not Unlawful.

Notwithstanding any other provision of this ordinance:

(A)  It shall not be an unlawful employment practice for an employer
to hire and employ employees, for an employment agency to classify, or refer
for employment any individual, for a labor organization to classify its
membership or to classify or refer for employment any individual, or for an
employer, labor organization, or joint labor-management committee controlling
apprenticeship or other training or retraining programs to admit or employ
any individual in any such program, on the basis of religion, sex, sexual
orientation, national origin, age or physical handicap in those certain in-
stances where religion, sex, sexual orientation, national origin, age or
physical handicap is a bona fide occupational qualification reasonably
necessary to the normal operation of that particular business or enterprise,
and,

(B)  It shall not be an unlawful employment practice for a school,
college, university, or other educational institution or institution of
learning to hire and employ employees of a particular religion if such school,
college or university or other educational institution or institution of
learning is, in whole, or in substantial part, owned, supported, controlled,
or managed by a particular religion or by a particular religious corporation,
association, or society, or if the curriculum of such school, college, univer-
sity, or other educational institution or institution of learning is directed
toward the propagation of a particular religion.

(C)  This ordinance shall not apply to a religious corporation,
association, educational institution, or society with respect to the employ-
ment of individuals of a particular religion to perform work connected with
the carrying on by such corporation, association, educational institution,
or society of its activities.

(D)  It shall not be an unlawful practice for an employer to apply
different standards of compensation, or different terms, conditions, or
privileges of employment pursuant to a bona fide seniority or merit system,
or a system which measures earnings by quantity or quality of production, or,
to employees who work in different locations, provided that such differences
are not the result of an intention to discriminate because of race, color,
sex, sexual orientation, religion, national origin, age or physical handicap.

SECTION 6.  Procedure.

Investigation and Conciliation.  The Commission is empowered as
hereinafter provided to prevent any person from engaging in any unlawful
employment practice.

A.  Whenever a charge is filed with the Commission by a person
claiming to be aggrieved alleging that an employer, employment agency, labor

446

CITY OF AUSTIN, TEXAS

organization, or joint labor management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances with as much specificity as possible of the alleged unlawful employment practice) by the director or an investigator on such employer, employment agency, labor organization or joint labor-management committee (hereinafter referred to as the "respondent") within ten (10) days.  Provided however, that before any charge becomes accepted for investigative purposes the director or an investigator shall have personally reviewed with the charging party the allegations contained therein and shall have determined said charge comes within the provisions of this ordinance.  In the event such review results in the determination that a particular charge does not come within the provisions of this ordinance, the charging party shall be given a clear and concise explanation of the reasons why it does not, and may appeal such determination in accordance with the procedure set forth in (C) below.  Records shall be maintained indicating the reason(s) for which a charge was not accepted for investigation.  An investigation of charges accepted shall be made by the director or an investigator.  The report of investigation results and recommendations shall be filed with the Commission by said investigator(s) at such time(s) as the Commission directs.  A charge under this section must be filed within not more than 180 days after the alleged unlawful employment practice occurred.

B.   Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges which may lead to litigation of a criminal or civil nature, shall not be made public unless otherwise required to be disclosed by state law.

C.   If the investigator(s) determine after investigation that there is not reasonable cause to believe that the charge is true, the Commission shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action.  Within ten (10) days from the receipt of such notice the complainant, or his attorney, shall file with the Commission a request for review and the Commission shall provide the person claiming to be aggrieved and his attorney an opportunity to appear before the Commission.  Upon conclusion of such hearing the Commission may by majority vote affirm, reverse or modify the finding of the investigator, as appropriate.

D.   If after investigation it is determined that there is reasonable cause to believe that a charge is true, the director or a conciliator who has not participated in that investigation, shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion.  Nothing said or done during and as a party of such informal endeavors may be made public by the Commission, the director, investigator or conciliator or be used as evidence in a subsequent proceeding without the written consent of the persons concerned.  All determinations shall be made as reasonable and as promptly as possible.  At any time should a respondent desire to enter into a predetermination settlement, same shall be allowed provided the aggrieved party and the director agree such is acceptable and promotable of the objectives of this ordinance.

447

CITY OF AUSTIN, TEXAS

E.  If the director or conciliator is unable to secure from the respondent an acceptable conciliation agreement after investigation, the Commission must upon a majority vote, refer the case to the City Attorney for prosecution in Municipal Court or to the United States Equal Employment Opportunity Commission.  Prosecution in Municipal Court shall not constitute a bar to relief from the United States Equal Employment Opportunity Commission or by civil proceedings.

SECTION 7.  Enforcement.

A.  In connection with any investigation of a charge filed under this ordinance, the director or investigator shall at all reasonable times have access to, for the purposes of examination and the right to copy, any evidence of any person being investigated or proceeded against that relates to unlawful employment practices and is relevant to the charge under investigation and is not confidential as provided by law.

B.  No person shall willfully obstruct, or prevent compliance with this ordinance or hinder or interfere with the performance of the proper exercise of a duty, obligation, right or power of the Commission or its representatives, or other officials with duties, obligations, rights and powers established by ordinance.

C.  The City Manager shall instruct the City Attorney to assign counsel or to obtain counsel to assist the Commission in the performance of its functions and make such other administrative arrangements as are normal and necessary for the functioning of the Commission.

D.  The Commission shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this ordinance.  The City Attorney shall be consulted regarding rules and regulations adopted by the Commission before becoming effective.  Such rules and regulations shall be in conformity with procedural due process.

E.  In construing this ordinance, it is the intent of the City Council that Municipal Court shall be guided by the Rules and Regulations of the Equal Opportunity Commission and Federal Court interpretations of Title VII of the Civil Rights Act of 1964, as amended, and as appropriate the "Age Discrimination in Employment Act of 1967."

SECTION 8.  Penalties.

Any person who shall violate any provision of this ordinance, or who shall willfully obstruct or prevent compliance with this ordinance, shall be subject to a fine of not more than two hundred dollars ($200).

SECTION 9.  Severability.

If for any reason any section, paragraph, subdivision, clause, phrase, word, or provision of this ordinance shall be held invalid or unconstitutional by final judgment of a court of competent jurisdiction, it shall not affect any other section, paragraph, clause, phrase, word or provision of this ordinance.

448

CITY OF AUSTIN, TEXAS

SECTION 10.  WHEREAS, an emergency is apparent for the immediate preservation
of order, health, safety and general welfare of the public, which emergency
requires the suspension of the rule providing for the reading of an ordinance
on three separate days, and requires that this Ordinance become effective
immediately upon its passage, therefore the rule requiring the reading on
three separate days is hereby suspended and this Ordinance shall become
effective immediately upon its passage as provided by the Charter of the
City of Austin.

PASSED AND APPROVED                    X

_____July 10_____ , 1975    X    _____
                                                          Mayor

APPROVED: _____    ATTEST: _____
              City Attorney                         City Clerk


10JUL75

EXHIBIT 2

## ORDINANCE NO. <u>040610-7</u>

**AN ORDINANCE AMENDING SECTIONS 2-1-312 AND 2-1-313 OF THE CITY CODE RELATING TO THE HUMAN RIGHTS COMMISSION, CHAPTER 5-1 OF THE CITY CODE RELATING TO HOUSING DISCRIMINATION, CHAPTER 5-2 OF THE CITY CODE RELATING TO DISCRIMINATION IN PUBLIC ACCOMMODATIONS, AND CHAPTER 5-3 OF THE CITY CODE RELATING TO DISCRIMINATION IN EMPLOYMENT GENERALLY.**

### BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF AUSTIN:

**PART 1.**  Section 2-1-312 of the Code is amended to read:

**§2-1-312     ORGANIZATION AND CONDUCT OF BUSINESS.**

(A)  The commission shall elect [and appoint a chairperson and such other] officers [from among its members,] and <u>may</u> adopt rules for the transaction of its authorized business [, as it may elect].

(B)  The city manager shall assign [to the commission] a City employee to serve as <u>liaison to the Commission</u> [executive secretary,] and <u>may assign</u> other employees as [may be] necessary to <u>assist with</u> [perform] the functions of the commission.

**PART 2.**  Subsections (6) and (7) of Section 2-1-313 are amended to read:

**§2-1-313     DUTIES AND FUNCTIONS.**

(6) Receive [and investigate] complaints and [, as provided by state law, and if necessary, subpoena witnesses and documents needed for investigation of those complaints, and] initiate investigations of tensions, acts of prejudice, and practices of discrimination.

(7) Conduct public hearings on complaints and <u>present a written</u> [investigate and] report to the <u>council, including</u> [Council in writing] facts, findings, and recommendations. <u>The commission shall use</u> [after using persuasion,] mediation[,] and conciliation before <u>it conducts a</u> [any] public hearing, and <u>shall provide a</u> [after make certain that any] person named in <u>a</u> [any] report [of investigation was given] the opportunity to be heard before the commission, <u>including a</u> [with the] right to examine and cross-examine witnesses.

**PART 3.** Articles 1 and 2 of Chapter 5-1 of the Code are amended to read:

## CHAPTER 5-1. HOUSING DISCRIMINATION.

### *ARTICLE 1. GENERAL PROVISIONS.*

**§ 5-1-1     DECLARATION OF POLICY.**

(A) It is [hereby declared to be] the policy of the City to bring about through fair, orderly and lawful procedures, the opportunity of each person to obtain housing without regard to race, color, creed, religion, sex, national origin, disability [handicap], [status as a] student status, marital status, familial status, sexual orientation, gender identity, or age.

(B) This [It is further declared that such] policy is established upon a recognition of the inalienable rights of each individual to obtain housing without regard to race, color, creed, religion, sex, national origin, disability [handicap], [status as a] student status, marital status, familial status, sexual orientation, gender identity, or age; and further that the denial of such rights through considerations based on race, color, creed, religion, sex, national origin, disability [handicap], [status as a] student status, marital status, familial status, sexual orientation, gender identity, or age, is detrimental to the health, safety and welfare of the inhabitants of the City and constitutes an unjust denial or deprivation of such inalienable rights which is within the power and the proper responsibility of the government to prevent.

**§ 5-1-2     SCOPE.**

(A) To provide a procedure for investigating and settling complaints of discriminatory housing practices which are violations of state and federal law, to provide rights and remedies substantially equivalent to those granted under federal law and to permit the director to accept referral of complaints from the [U.S. Attorney General and the] Secretary of Housing and Urban Development and from the Texas Commission on Human Rights, Article 2 (*Discrimination in Housing – Fair Housing Act Compliance*) [of this chapter] prohibits discrimination in housing on the basis of race, color, sex, religion, disability [handicap], familial status or national origin and establishes procedures to enforce the provisions of federal and state law.

(B) Even though federal law protects individuals against discrimination in housing based on race, color, sex, religion, disability [handicap], familial status or national origin, it is the policy of the City that no person should be denied the opportunity to obtain housing on the basis of creed, [status as a] student status,

marital status, sexual orientation, gender identity, or age.  [To effectuate this policy, Article 3 of this chapter prohibits discrimination in housing on any of those bases and establishes procedures to enforce those prohibitions.]

[§ 5-1-3      ELECTION OF REMEDIES.

Because the provisions of federal law provide remedies for discriminatory housing practices based on race, color, religion, sex, familial status, handicap or national origin which cannot be provided by this chapter for discriminatory housing practices based on creed, status as a student, marital status, sexual orientation or age, any individual who desires to file a complaint based on violations of both Articles 2 and 3 must, at the time the complaint is filed, elect to proceed under only one of such articles.  The commission shall notify the complainant of the requirement to make such an election and explain to the complainant the differing provisions and remedies available under Article 2 and Article 3.]

## ARTICLE 2.  DISCRIMINATION IN HOUSING - FAIR HOUSING ACT COMPLIANCE.

### Division 1. General Provisions.

§ 5-1-11 [20]      PURPOSE.

The purposes of this article are:

(1)  to provide for fair housing practices in the City;

(2)  to create a procedure for investigating and settling complaints of discriminatory housing practices; and

(3)  to provide rights and remedies substantially equivalent to those granted under state and federal law.

§ 5-1-12 [21]      AUTHORITY.

This article is enacted pursuant to authority explicitly granted municipalities by Section 214.903 (*Fair Housing Ordinances*) of the Texas Local Government Code the, Chapter 301 (*Texas Fair Housing Act*) of the Texas Property Code.

§ 5-1-13 [22]        DEFINITIONS.

In this article:

(1)  ADMINISTRATOR means the Equal Employment/Fair Housing Office administrator [or chief staff officer of the commission who is] appointed by the director.

(2)  AGE means the calendar age of an individual 18 years of age or older.

(3)  AGGRIEVED PERSON includes a [any] person who:

    (a)  claims to have been injured by a discriminatory housing practice; or

    (b)  believes that he will be injured by a discriminatory housing practice that is about to occur.

(4)  COMPLAINANT means a person, including the administrator or the commission, who files a complaint under Section 5-1-60 (*Complaint*).

(5)  COMMISSION means the Austin Human Rights Commission.

(6)  CONCILIATION means the attempted resolution of issues raised by a complainant or by the investigation of the complaint, through informal negotiations involving the aggrieved person, the respondent, and the Equal Employment/Fair Housing Office [commission].

(7)  CONCILIATION AGREEMENT means a written agreement setting forth the resolution of the issues in conciliation.

(8)  COVERED MULTIFAMILY DWELLING means:

    (a)  buildings consisting of four or more units if such buildings have one or more elevators; and

    (b)  ground floor units in other buildings consisting of four or more units.

(9)  CREED means a set of principles, rules, opinions, or precepts formally expressed and seriously adhered to or maintained by a person.

(10)  [(9)] DIRECTOR means the director of the Human Resources Department.

(11)  DISABILITY, with respect to an individual, means:

(a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual;

(b) a record of the impairment; or

(c) being regarded as having an impairment.

(12) [(10)] DISCRIMINATORY HOUSING PRACTICE means an act prohibited by this article.

(13) [(11)] DWELLING means:

(a) a [any] building, structure, or part of a building or structure that is occupied as, or designed or intended for occupancy as, a residence by one or more families; or

(b) [any] vacant land that is offered for sale or lease for the construction or location of a building, structure or part of a building or structure described in Subsection (a) [of this definition].

(14) EQUAL EMPLOYMENT/FAIR HOUSING OFFICE means the staff in the Human Resources Department that handles cases referred to the City by the United States Department Housing and Urban Development or the Texas Commission on Human Rights.

(15) [(12)] FAMILY means a single individual or group of individuals living together under one common roof.

(16) [(13)] FAMILY STATUS means the status resulting from:

(a) [The status resulting from] one or more persons who are under [the age of] 18 years old being domiciled with an individual who is either the parent of the persons under [age] 18 years old, [;] the legal guardian or custodian of the persons under [age] 18 years old, [;] or the designee (with written authorization) of the parent, [or] legal guardian, or custodian of the persons under [age] 18 years old; [.]

(b) [The status resulting from] being pregnant; or [.]

(c) [The status resulting from] being in the process of securing legal custody of a [any] person who is under [the age of] 18 years old.

[(14) HANDICAP means a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having

~~such an impairment.  This does not include the current illegal use of or addiction to a controlled substance.~~]

(17)  GENDER IDENTITY means a person's various individual attributes, actual or perceived, that may be in accord with or sometimes opposed to, one's physical anatomy, chromosomal sex, genitalia, or sex assigned at birth.

(18)  [(15)]HOUSING FOR OLDER PERSONS means housing:

    (a)  that is determined by the Equal Employment/Fair Housing Office [~~commission~~], consistent with the United States Department of Housing and Urban Development's guidelines, to be specifically designed and operated to assist elderly persons under a federal or state program;

    (b)  intended for, and solely occupied by, persons 62 years of age and older; or

    (c)  intended and operated for occupancy by at least one person 55 years of age or older per unit.  In determining whether housing meets this definition, the Equal Employment/Fair Housing Office [~~commission~~] shall consider at least the following factors:

        (i)  the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or, if such improvements are not practicable, that such housing is necessary to provide important housing opportunities for older persons;

        (ii)  that at least 80 percent [%] of the units are occupied by at least one person 55 years of age or older per unit; and

        (iii)  the publication of and adherence to policies and procedures demonstrating an intent by the owner or manager to provide housing for persons 55 years of age or older.

(19)  [(16)[ MAJOR LIFE ACTIVITIES means functions including [~~such as, but not limited to,~~] caring for one's self [~~oneself~~], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(20)  MARITAL STATUS means an individual's status as a single, married, divorced, widowed, or separated person.

(21) [(17)] PERSON includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11 of the United States Bankruptcy Code, receivers, and fiduciaries.

(22) [(18)] RESPONDENT means:

  (a) the person accused of a violation of this article in a complaint of discriminatory housing practice; or

  (b) any person identified as an additional or substitute respondent under Section 5-1-74 [5-1-63] (*Additional or Substitute Respondent*) or an agent of an additional or substitute respondent.

(23) SEXUAL ORIENTATION means an individual's sexual preference or practice including homosexuality, heterosexuality, or bisexuality.

(24) STUDENT STATUS means an individual's status as a student enrolled in any type of educational program or institution.

(25) [(19)] TO RENT includes to lease, sublease, to let, or to otherwise grant for a consideration the right to occupy premises not owned by the occupant.

## § 5-1-14 [23]   CERTAIN SALES AND RENTALS EXEMPTED.

(A) Subject to Subsection (B), Division 3 (*Prohibitions Against Discrimination*) does [of this section, Sections 5-1-50 through 5-1-56 of this article do] not apply to:

  (1) The sale or rental of a single-family house sold or rented by an owner if:

    (a) the owner does not:

      (i) own more than three single-family houses at any one time; or

      (ii) own any interest in, nor is there owned or reserved on his behalf, under any express or voluntary agreement, title to any right to any part of the proceeds from the sale or rental of more than three single-family houses at any one time; and

    (b) the house was sold or rented without:

      (i) the use of the services or facilities of a real estate agent or any other person in the business of selling or renting real estate; or

    (ii)  the publication, posting, or mailing of a notice, statement or advertisement prohibited by Section 5-1-52 [5-1-51] (*Publication Indicating Discrimination*).

(2)  The sale or rental of rooms or units in a dwelling containing living quarters occupied or intended to be occupied by no more than four families living independently of each other if the owner maintains and occupies one of the living quarters of the owner's residence, except that the prohibition against discriminatory advertising shall apply to dwellings described in this paragraph.

(B)  The exemption in Subsection (A)(1) [of Subsection (A) of this section] applies only to one sale or rental in a 24-month period if the owner did not reside in the house at the time of sale or rental or was not the most recent resident of the house prior to the sale or rental.

## § 5-1-15 [24]   RELIGIOUS ORGANIZATION AND PRIVATE CLUB EXEMPTION.

(A)  This article does not prohibit a religious organization, association, or society, or a nonprofit institution or organization operated, supervised, or controlled by or in conjunction with a religious organization, association, or society, from:

(1)  limiting the sale, rental, or occupancy of dwellings that it owns or operates for other than a commercial purpose to persons of the same religion, unless membership in the religion is restricted because of race, color, or national origin; or

(2)  giving preference to persons of the same religion unless membership in the religion is restricted because of race, color, or national origin.

(B)  This article does not prohibit a private club not in fact open to the public that, as an incident to its primary purpose, provides lodging that it owns or operates for other than a commercial purpose from limiting the rental or occupancy of that lodging to its members or from giving preference to its members.

## § 5-1-16 [25]   HOUSING FOR ELDERLY EXEMPTED.

The provisions of this article relating to familial status do not apply to housing for older persons.

## § 5-1-17 [26]   APPRAISAL EXEMPTION.

This article does not prohibit a person engaged in the business of furnishing appraisals of residential real property from taking into consideration factors other than

race, color, religion, sex, <u>sexual orientation, gender identity, disability, age, family</u> [handicap, familial] status, or national origin.

## § 5-1-<u>18</u> [27]   EFFECT ON OTHER LAW.

(A)  This article does not affect a reasonable state or local restriction on the maximum number of occupants permitted to occupy a dwelling or a restriction relating to health or safety standards.

(B)  This article does not affect a requirement of nondiscrimination in any other ordinance or state or federal law.

### Division 2. Administration.

## § 5-1-<u>31</u> [40]   ADMINISTRATION.

[(A)] The <u>Equal Employment/Fair Housing Office</u> [commission] shall administer this article.

## § 5-1-<u>32</u>   RULES.

[(B) Rules.]  The <u>Equal Employment/Fair Housing Office</u> [commission] may adopt <u>both substantive and procedural</u> rules necessary to implement this article, provided that substantive rules [adopted by the commission] shall impose obligations, rights, and remedies which are substantially the same as provided in federal fair housing regulations. [The commission may adopt procedural rules to implement this chapter.]

## § 5-1-<u>33</u>   COMPLAINTS.

[(C)  Complaints.]  The <u>Equal Employment/Fair Housing Office</u> [commission] shall receive, investigate, seek to conciliate, and act on complaints alleging violations of this article.

[(D) Delegation of authority.  The commission may, by rule, authorize the administrator of the commission to exercise the commission's powers or perform the commission's duties under this article.]

[(E) Reports, studies.  The commission shall, at least annually, make a written report to the city council recommending legislative or other action to carry out the purposes of this article.  The commission shall make studies relating to the nature and extent of discriminatory housing practices in this City.]

## § 5-1-<u>34</u>   COOPERATION WITH OTHER ENTITIES.

[(F) Cooperation with other entities.]  The <u>Equal Employment/Fair Housing Office</u> [commission] shall cooperate with and, as appropriate, may provide technical and other

assistance to federal, state, local, and other public or private entities that are formulating or operating programs to prevent or eliminate discriminatory housing practices.

## § 5-1-35   SUBPOENAS; DISCOVERY.

[(G) Subpoenas, discovery.] The Equal Employment/Fair Housing Office [commission] may issue subpoenas and order discovery [as provided by this section] in aid of investigations and hearings under this article [.  The subpoenas and discovery may be ordered] to the same extent and are subject to the same limitations as subpoenas and discovery in a civil action in District Court.

## § 5-1-36   WITNESS FEES.

[(H) Witness fees.] Witnesses summoned by a subpoena under this article are [shall be] entitled to the same witness and mileage fees as witnesses in state District Court. Fees payable to a witness summoned by a subpoena issued at the request of a party shall be paid by that party, or, where a party is indigent, by the Equal Employment/Fair Housing Office [commission].

### Division 3.  Prohibitions Against Discrimination.

## § 5-1-51 [50]   DISCRIMINATION IN SALE OR RENTAL OF HOUSING.

(A) A person may not refuse to sell or rent a dwelling to a person who has made a *bona fide* offer; refuse to negotiate for the sale or rental of a dwelling; or otherwise make unavailable or deny a dwelling to any person based on [because of] race, color, religion, sex, sexual orientation, gender identity, age, family [familial] status, disability, or national origin.

(B) A person may not discriminate against a [any] person in the terms, conditions, or privileges of sale or rental of a dwelling or in providing services or facilities in connection with the sale or rental, based on [because of] race, color, religion, sex, sexual orientation, gender identity, age, family [familial] status, disability, or national origin.

(C) This section does not prohibit discrimination against a person because the person has been convicted under federal law or the law of any state of the illegal manufacture or distribution of a controlled substance, but does not permit discrimination based on a disability [on the basis of a handicap].

## § 5-1-52 [51]   PUBLICATION INDICATING DISCRIMINATION.

A person may not make, print, or publish or cause to be made, printed, or published any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, sexual orientation; gender identity, disability, age, family [handicap,

familial] status, or national origin, or an intention to make such a preference, limitation, or discrimination.

§ 5-1-53 [52]       AVAILABILITY FOR INSPECTION.

A person may not represent to a [any] person based on [because of] race, color, religion, sex, sexual orientation, gender identity, disability, age, family [handicap, familial] status, or national origin that a dwelling is not available for inspection, for sale or rental when the dwelling is available for inspection.

§ 5-1-54 [53]       ENTRY INTO NEIGHBORHOOD.

A person may not, for profit, induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry or prospective entry into a neighborhood of a person of a particular race, color, religion, sex, sexual orientation, gender identity, disability, age, family [familial] status, or national origin.

§ 5-1-55 [54]       DISCRIMINATION BASED ON DISABILITY PROHIBITED [HANDICAP].

(A) A person may not discriminate in the sale or rental or otherwise make unavailable or deny a dwelling to a buyer or renter based on a disability [because of a handicap] of:

   (1) that buyer or renter;

   (2) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or

   (3) a [any] person associated with that buyer or renter.

(B) A person may not discriminate against a [any] buyer or renter in the terms, conditions, or privileges of the sale or rental of a dwelling or in providing [the provision of] services or facilities in connection with the dwelling based on a disability [because of a handicap] of:

   (1) that buyer or renter;

   (2) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or

   (3) a [any] person associated with that person.

(C) For purposes of this section only, discrimination includes:

   (1) A refusal by an owner or landlord to permit, at the expense of the person with the disability [handicap], reasonable modifications of existing

premises occupied or to be occupied by the person if the modifications may be necessary to afford the person full enjoyment of the premises of a dwelling, provided that, in the case of a rental, a landlord may reasonably condition permission for modifications upon the renter's agreement to restore the interior of the premises to its pre-modification condition, reasonable wear and tear excepted, and reasonably condition the [such] permission on the renter providing a reasonable description of the proposed modifications and reasonable assurances that all work will be done in a workmanlike manner and that all required permits will be obtained.

(2)  A landlord may not increase for a person with a disability a [handicapped persons any] customarily required security deposit [deposited], except that, to ensure available funds for restorations, if any, a landlord may negotiate an agreement that the renter deposit into an interest bearing escrow account, over a reasonable period, a reasonable amount not to exceed the cost of restorations.  All interest shall accrue to the renter's benefit.

(3)  A refusal by an owner or landlord to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford a [handicapped] person with a disability the equal opportunity to use and enjoy a dwelling, including public and common use areas.

(4)  In connection with the design and construction of covered multifamily dwellings for first occupancy after September 13, 1991, a failure by the owner to design and construct those dwellings in [such] a manner that:

(a)  the dwellings have at least one building entrance on an accessible route, unless it is impractical to do so because of the terrain or unusual characteristics of the site;

(b)  the public use and common use portions of the dwellings are readily accessible and usable by persons with a disability [handicap];

(c)  all the doors designed to allow passage into and within all premises within the dwellings are sufficiently wide to allow passage by an individual [persons] in a wheelchair [wheelchairs]; and

(d)  all premises within the dwellings contain the following features of adaptive design:

(i)  an accessible route into and through the dwelling;

(ii) light switches, electrical outlets, thermostats, and other environmental control in accessible locations;

(iii) reinforcements in bathroom walls to allow later installation of grab bars; and

(iv) usable kitchens and bathrooms so that an individual in a wheelchair can maneuver about the space.

(5) Making any inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling or any person associated with that person, has a <u>disability</u> [handicap] or to determine the nature or severity of <u>the disability</u> [any handicap], except that the following inquiries may be made if these inquiries are made of all applicants, regardless of <u>disability</u> [handicap]:

(a) inquiry into an applicant's ability to meet the requirements of ownership or tenancy;

(b) inquiry to determine whether an applicant is qualified for a dwelling available only to <u>a person with a disability</u> [persons with handicaps] or to <u>a person</u> [persons] with a particular type of <u>disability</u> [handicap];

(c) inquiry to determine whether an applicant for a dwelling is qualified for a priority available to <u>a person with a disability</u> [persons with handicaps] or to <u>a person</u> [persons] with a particular type of <u>disability</u> [handicap];

(d) inquiring whether an applicant for a dwelling is a current illegal user or addict of a controlled substance; <u>and</u>

(e) inquiring whether an applicant has been convicted of the illegal manufacture or distribution of a controlled substance.

(D) Compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for *persons with physical disabilities, commonly cited as "ANSI A 117.1,"* suffices to satisfy the requirements of Subsection (C)(4)(c) [of this section].

(E) <u>In</u> [As used in] this <u>section</u> [subsection], the term <u>"covered multifamily dwelling"</u> [COVERED MULTI-FAMILY DWELLINGS] means:

(1) <u>buildings</u> [Buildings] consisting of four or more units if the buildings have one or more elevators; and

(2) ground [Ground] floor units in other buildings consisting of four or more units.

(F) Nothing in this section requires that a dwelling be made available to a person [an individual] whose tenancy would constitute a direct threat to the health or safety of others [other individuals] or whose tenancy would result in substantial physical damage to the property of others.

## § 5-1-56 [55]        RESIDENTIAL REAL ESTATE RELATED TRANSACTION.

(A) A person whose business includes engaging in residential real estate related transactions may not discriminate against a person in making a real estate related transaction available or in the terms or conditions of a real estate related transaction because of race, color, religion, sex, sexual orientation, gender identity, disability, age, family [handicap, familial] status, or national origin.

(B) In this section, "residential real estate related transaction" [RESIDENTIAL REAL ESTATE RELATED TRANSACTION] means:

(1) making or purchasing loans or providing other financial assistance:

(a) to purchase, construct, improve, repair, or maintain a dwelling; or

(b) secured by residential real estate; or

(2) selling, brokering, or appraising residential real property.

## § 5-1-57 [56]        BROKERAGE SERVICES.

A person may not deny any person access to, or membership or participation in, a multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or discriminate against a person in the terms or conditions of access, membership, or participation in such an organization, service, or facility because of race, color, religion, sex, sexual orientation, gender identity, disability, age, family [handicap, familial] status, or national origin.

### Division 4.  Complaint, Investigation, and Administrative Action.

## § 5-1-71 [60]        COMPLAINT.

(A) The Equal Employment/Fair Housing Office [commission] shall investigate alleged discriminatory housing practices.

(B) A complaint must be:

(1) in writing;

      (2)  under oath; and

      (3)  in the form prescribed by the <u>Equal Employment/Fair Housing Office</u> [~~commission~~].

(C)  An aggrieved person may, not later than one year after an alleged *discriminatory housing practice has occurred or terminated, whichever is later,* file a complaint with the <u>Equal Employment/Fair Housing Office</u> [~~commission~~] alleging the discriminatory housing practice.

(D)  Not later than one year after an alleged discriminatory housing practice has occurred or terminated, whichever is later, the <u>Equal Employment/Fair Housing Office</u> [~~commission~~] may file its own complaint.

(E)  A complaint may be amended at any time.

(F)  Upon the filing of a complaint, the <u>Equal Employment/Fair Housing Office</u> [~~commission~~] shall issue a written notice to the complainant and the aggrieved person if different from the complainant:

      (1)  advising that the complaint has been filed, and the date the complaint was accepted for filing;

      (2)  including a copy of the complaint;

      (3)  advising of the time limits applicable to the complaint and of all procedural rights and obligations of the aggrieved person under this article;

      (4)  advising of the aggrieved person's right to commence a civil action as provided by federal and state laws and the time period which such action may be filed; and

      (5)  advising that retaliation against any person who files a complaint or assists or otherwise participates in the investigation of a complaint is a discriminatory housing practice.

(G)  Not later than the tenth day after a complaint is filed, the <u>Equal Employment/Fair Housing Office</u> [~~commission~~] shall issue a written notice to each respondent, by certified mail or personal service:

      (1)  advising the date the complaint was accepted for filing;

      (2)  identifying the alleged discriminatory housing practice;

      (3)  including a copy of the complaint;

    (4) advising of the time limits applicable to complaint processing and of all procedural rights and obligations of the respondent under this article, including the right to submit an answer to the complaint within ten days after receipt of the notice;

    (5) advising of the aggrieved person's right to commence a civil action as provided by federal law and the time period within which such action may be filed;

    (6) advising why the respondent has been joined to the complaint if the respondent is not specifically named in the complaint; and

    (7) advising that retaliation against any person who files a complaint or assists or otherwise participates in the investigation of a complaint is a discriminatory housing practice.

(H) The <u>Equal Employment/Fair Housing Office</u> [commission] shall commence proceedings with respect to the complaint before the end of the 30th day after receipt of the complaint.

## § 5-1-<u>72</u> [61]      ANSWER.

(A) Not later than the tenth day after receipt of the notice and copy under Section <u>5-1-71(F)(3)</u> [5-1-60(F)(3)] (*Complaint*), a respondent may file an answer to the complaint.

(B) An answer must be:

    (1) in writing;

    (2) under oath; and

    (3) in the form prescribed by the <u>Equal Employment/Fair Housing Office</u> [commission].

(C) An answer may be amended at any time.

(D) An answer does not inhibit the investigation of a complaint.

## § 5-1-<u>73</u> [62]      INVESTIGATION.

(A) If the state or federal government has referred a complaint to the <u>City</u> [commission] or has deferred jurisdiction over the subject matter of the complaint to the <u>City</u> [commission], the <u>Equal Employment/Fair Housing Office</u> [commission] shall promptly investigate the allegations set forth in the complaint.

(B) The Equal Employment/Fair Housing Office [commission] shall investigate all complaints, and except as provided by Subsection (C) [of this section], shall complete an investigation no later than the 100th day after the date the complaint is filed, or if it is unable to complete the investigation within the 100-day period, shall dispose of all administrative proceedings related to the investigation not later than one year after the date the complaint is filed.

(C) If the Equal Employment/Fair Housing Office [commission] is unable to complete an investigation within the time periods prescribed by Subsection (B) [of this section], the Equal Employment/Fair Housing Office [commission] shall notify the complainant and the respondent in writing of the reasons for the delay.

## § 5-1-74 [63]    ADDITIONAL OR SUBSTITUTE RESPONDENT.

(A) The Equal Employment/Fair Housing Office [commission] may join a person not named in the complaint as an additional or substitute respondent if in the course of the investigation the Equal Employment/Fair Housing Office [commission] determines that the person should be accused of a discriminatory housing practice.

(B) In addition to the information required in the notice under Section 5-1-71(G) [5-1-60(G)] (*Complaint*) the Equal Employment/Fair Housing Office [commission] shall include in a notice to a respondent joined under this section an explanation of the basis for the determination that the person is properly joined as a respondent.

## § 5-1-75 [64]    CONCILIATION.

(A) The Equal Employment/Fair Housing Office [commission] shall, during the period beginning with the filing of a complaint and ending with the filing of a charge or a dismissal by the Equal Employment/Fair Housing Office [commission], to the extent feasible, engage in conciliation with respect to the complaint.

(B) A conciliation agreement is a written agreement between a respondent and the complainant and is subject to Equal Employment/Fair Housing Office [commission] approval.

(C) A conciliation agreement may provide for binding arbitration or other method of dispute resolution.  Dispute resolution that results from a conciliation agreement may authorize appropriate relief, including monetary relief.

(D) A conciliation agreement shall be made public unless the complainant and respondent agree otherwise, and the Equal Employment/Fair Housing Office

[~~commission~~] determines that disclosure is not necessary to further the purposes of this article.

(E) Nothing said or done in the course of conciliation may be made public or used as evidence in a subsequent proceeding under this article without the written consent of the persons concerned.

(F) After completion of the Equal Employment/Fair Housing Office's [~~commission's~~] investigation, the Equal Employment/Fair Housing Office [~~commission~~] shall make available to the aggrieved person and the respondent, at any time, information derived from the investigation and the final investigation report related to the investigation.

## § 5-1-76 [65]        TEMPORARY OR PRELIMINARY RELIEF.

(A) If the Equal Employment/Fair Housing Office [~~commission~~] concludes at any time following the filing of a complaint that prompt judicial action is necessary to carry out the purposes of this article, the Equal Employment/Fair Housing Office [~~commission~~] may request a civil action for appropriate temporary or preliminary relief pending final disposition of the complaint.  The Equal Employment/Fair Housing Office [~~commission~~] may direct the request for civil action to the Texas Commission on Human Rights or to the city attorney.

(B) Upon receipt of the Equal Employment/Fair Housing Office's [~~commission's~~] request, the city attorney shall promptly assess the case and determine whether to file an action.

(C) A temporary restraining order or other order granting preliminary or temporary relief under this section is governed by the applicable Texas Rules of Civil Procedure.

(D) The filing of a civil action under this section does not affect the initiation or continuation of administrative proceeding under Section 5-1-85 [5-1-74] (*Administrative Hearing*).

## § 5-1-77 [66]        INVESTIGATIVE REPORT.

(A) The Equal Employment/Fair Housing Office [~~commission~~] shall prepare a final investigative report showing:

(1) the names and dates of contacts with witnesses;

(2) a summary of correspondence and other contacts with the aggrieved person and the respondent showing the dates of the correspondence and contacts;

(3) a summary description of other pertinent records;

(4) a summary of witness statements; and

(5) answers to interrogatories.

(B) A final report under this section may be amended if additional evidence is discovered.

## § 5-1-78 [67]      REASONABLE CAUSE DETERMINATION.

(A) The Equal Employment/Fair Housing Office [commission] shall determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice occurred or is about to occur.

(B) The Equal Employment/Fair Housing Office [commission] shall make the determination under Subsection (A) [of this section] not later than the 100th day after the date a complaint is filed unless:

(1) it is impracticable to make the determination; or

(2) the Equal Employment/Fair Housing Office [commission] has approved a conciliation agreement relating to the complaint.

(C) If it is impracticable to make the determination within the time period provided by Subsection (B) of this section, the Equal Employment/Fair Housing Office [commission] shall notify the complainant and respondent in writing of the reasons for the delay.

(D) If the Equal Employment/Fair Housing Office [commission] determines that reasonable cause exists to believe that a discriminatory housing practice occurred or is about to occur, the Equal Employment/Fair Housing Office [commission] shall, except as provided by Section 5-1-81 [5-1-70] (*Dismissal*), immediately issue a charge on behalf of the aggrieved person.

## § 5-1-79 [68]      CHARGE.

(A) A charge issued under Section 5-1-78 [5-1-67] (*Reasonable Cause Determination*):

(1) must consist of a short and plain statement of the facts on which the Equal Employment/Fair Housing Office [commission] has found reasonable cause to believe that a discriminatory housing practice occurred or is about to occur;

(2) must be based on the final investigative report; and

(3) need not be limited to the facts or grounds alleged in the complaint.

(B) Not later than the 20th day after the Equal Employment/Fair Housing Office [commission] issues a charge, the commission shall send a copy of the charge with information concerning the election under Section 5-1-83 [5-1-72] (*Election of Judicial Determination*) of this article to:

(1) each respondent, together with a notice of the opportunity for a hearing provided by Section 5-1-85 [5-1-74] (*Administrative Hearing*); and

(2) each aggrieved person on whose behalf the complaint was filed.

## § 5-1-80 [69]        LAND USE LAW.

If the Equal Employment/Fair Housing Office [commission] determines that the matter involves the legality of a state or local zoning or other land use law or ordinance, the Equal Employment/Fair Housing Office [commission] may not issue a charge and shall immediately refer the matter to the city attorney for appropriate action.

## § 5-1-81 [70]        DISMISSAL.

(A) If the Equal Employment/Fair Housing Office [commission] determines that no reasonable cause exists to believe that a discriminatory housing practice occurred or is about to occur, the Equal Employment/Fair Housing Office [commission] shall:

(1) issue a short and plain written statement of the facts explaining the determination of no reasonable cause; and

(2) dismiss the complaint and promptly notify the aggrieved person and the respondent of the dismissal, including the written statement of facts.

(B) The Equal Employment/Fair Housing Office [commission] may make public disclosure of each dismissal under this section. The aggrieved person and the respondent may request that no public disclosure be made, but the fact of dismissal, including the names of the parties, but not the statement of facts, shall be available to the public upon request.

## § 5-1-82 [71]        PENDING CIVIL TRIAL.

The Equal Employment/Fair Housing Office [commission] may not issue a charge under this section regarding an alleged discriminatory housing practice after the beginning of the trial of a civil action commenced by the aggrieved party under federal or state law or this article seeking relief with respect to that discriminatory housing practice.

### § 5-1-83 [72]         ELECTION OF JUDICIAL DETERMINATION.

(A) A complainant, a respondent, or an aggrieved person on whose behalf the complaint was filed may elect to have the claims asserted in that charge decided in a civil action as provided by Section 5-1-84 [5-1-73] (*City Attorney Action for Enforcement*).

(B) The election must be made no later than the 20th day after the date of receipt by the electing person of service under Section 5-1-79(B) [5-1-68(B)] (*Charge*) or, in the case of the Equal Employment/Fair Housing Office [commission], not later than the 20th day after the date the charge was issued.

(C) The person making the election shall give notice to the Equal Employment/Fair Housing Office [commission] and to all other complainants and respondents to whom the charge relates.

### § 5-1-84 [73]         CITY ATTORNEY ACTION FOR ENFORCEMENT.

(A) If a timely election is made under Section 5-1-83 [5-1-72] (*Election of Judicial Determination*) the Equal Employment/Fair Housing Office [commission] shall request, and not later than the 30th day after the election is made, the city attorney shall file, a civil action on behalf of the aggrieved person in a district court seeking relief under this section.

(B) Venue for an action under this section is in Travis County.

(C) An aggrieved person may intervene in the action.

(D) If the court finds that a discriminatory housing practice has occurred or is about to occur, the court may grant as relief any relief that a court may grant in a civil action under this article.

### § 5-1-85 [74]         ADMINISTRATIVE HEARING.

(A) If a timely election is not made under Section 5-1-83 [5-1-72] (*Election of Judicial Determination*), the complainant, respondent, or an aggrieved person on whose behalf the complaint was filed may request that the Equal Employment/Fair Housing Office [commission shall] provide for a hearing on the charge. A hearing under this section shall be conducted by an administrative law judge.

(B) Except as provided by Subsection (C), Chapter 2001 (*Administrative Procedure Act*) of the Texas Government Code governs a hearing and an appeal of a hearing under this section.

(C) A hearing under this section may not continue on an [regarding any] alleged discriminatory housing practice after the beginning of the trial of a civil action commenced by the aggrieved person under this article or federal or state law seeking relief with respect to that discriminatory housing practice.

(D) At the conclusion of a hearing under this section, the administrative law judge shall issue a written recommendation to the commission, including findings of fact.

## § 5-1-86 [75]      ADMINISTRATIVE PENALTIES.

(A) The commission shall review and take action on the administrative law judge's recommendation.  The commission may adopt, modify, or reject the recommendation.  If the commission rejects the recommendation, the commission shall make a determination based on the findings of fact submitted by the administrative law judge.

(B) [(A)] If the commission determines [at a hearing under Section 5-1-74 (Administrative Hearing)] that a respondent has engaged in or is about to engage in a discriminatory housing practice, the commission may order the appropriate relief, including compensatory damages, reasonable attorney's fees, court costs, and other injunctive or equitable relief.

(C) [(B)] To vindicate the public interest, the commission may assess a civil penalty against the respondent in an amount that does not exceed:

   (1) $10,000 if the respondent has not been adjudged to have committed any prior discriminatory housing practice;

   (2) except as provided by Subsection (D) [(C)], $25,000 if the respondent has been adjudged by order of the commission or a court to have committed one other discriminatory housing practice during the five year period ending on the date of the filing of this charge; and

   (3) except as provided by Subsection (D) [(C)], $50,000 if the respondent has been adjudged by order of the commission or a court to have committed two or more discriminatory housing practices during the seven year period ending on the date of the filing of the charge.

(D) [(C)] If the acts constituting the discriminatory housing practice that is the object of the charge are committed by the same individual who has been previously adjudged to have committed acts constituting a discriminatory housing practice, the civil penalties in Subsections (B)(2) and (3) may be imposed without regard to the period of time within which any other discriminatory housing practice occurred.

(E)  [(D)] At the request of the commission, the city attorney may sue to recover a civil penalty due under this section.  Funds collected under this section shall be paid to the city treasurer for deposit in the general revenue fund.

§ 5-1-87 [76]        EFFECT OF COMMISSION ORDER.

A commission order under Section 5-1-86 [5-1-75] (*Administrative Penalties*) does not affect a contract, sale, encumbrance, or lease that:

(1)  [(A)] was consummated before the commission issued the order; and

(2)  [(B)] involved a bona fide purchaser, encumbrancer, or tenant who did not have actual notice of the charge filed under this article.

§ 5-1-88 [77]        LICENSED OR REGULATED BUSINESSES.

If the commission issues an order with respect to a discriminatory housing practice that occurred in the course of a business subject to a licensing or regulation by a governmental agency, the commission shall, not later than the 30th day after the date of the issuance of the order:

(1)  [(A)] send copies of the findings and the order to the governmental agency; and

(2)  [(B)] recommend to the governmental agency appropriate disciplinary action.

§ 5-1-89 [78]        ORDER IN PRECEDING FIVE YEARS.

If the commission issues an order against a respondent against whom another order was issued within the preceding five years under Section 5-1-86 [5-1-75] (*Administrative Penalties*), the commission shall send a copy of each order issued under that section to the Texas Commission on Human Rights and to the attorney general.

§ 5-1-90 [79]        COOPERATION WITH STATE AND FEDERAL AGENCIES.

(A)  The Equal Employment/Fair Housing Office [commission] is encouraged to cooperate with the secretary of Housing and Urban Development and the attorney general of the United States in the enforcement of the Fair Housing Act of 1968, 42 U.S.C. § 3601, et seq., and may assist the secretary or attorney general in any way consistent with the policy of this chapter.  The Equal Employment/Fair Housing Office [commission] is encouraged to cooperate with the Texas Commission on Human Rights in the enforcement of Chapter 301 (*Texas Fair Housing Act*) of the Texas Property Code, and may assist the Texas Commission on Human Rights in any way consistent with the policy of this chapter.

(B) The Equal Employment/Fair Housing Office [commission] shall treat a complaint referred by the secretary of Housing and Urban Development or the attorney general of the United States under the Fair Housing Act of 1968, 42 U.S.C. § 3601, et seq., or by the Texas Commission on Human Rights under Chapter 301 (*Texas Fair Housing Act*) of the Texas Property Code as a complaint filed under this article.  No action will be taken under this article against a person for a discriminatory housing practice if the referred complaint was filed with the governmental entity later than one year after an alleged discriminatory housing practice occurred or terminated.

### Division 5. Civil Action.

### § 5-1-101 [90]    CIVIL ACTION.

(A) An aggrieved person may file a civil action in an appropriate United States district court not later than the second year after the later of [occurrence of] the termination of an alleged discriminatory housing practice[,] or the breach of a conciliation agreement entered into under this article [, whichever occurs last,] to obtain appropriate relief based on [with respect to] the discriminatory housing practice or breach.

(B) The two year period does not include any time during which an administrative hearing under this article is pending with respect to a complaint or charge under this article based on the discriminatory housing practice.  This subsection does not apply to actions arising from a breach of a conciliation agreement.

(C) An aggrieved person may file an action under this section whether or not a complaint has been filed under Section 5-1-71 [5-1-60] (*Complaint*) and without regard to the status of any complaint filed under that section.

(D) If the Equal Employment/Fair Housing Office [commission] has obtained a conciliation agreement with the consent of an aggrieved person, the aggrieved person may not file an action under this section based on [with respect to] the alleged housing practice [that forms the basis for the complaint] except to enforce the terms of the agreement.

(E) An aggrieved person may not file an action under this section based on [with respect to] an alleged discriminatory housing practice that forms the basis of a charge issued by the Equal Employment/Fair Housing Office [commission] if a hearings examiner [the commission] has begun a hearing on the record under this article on [with respect to] the charge.

## § 5-1-102 [91]      COURT APPOINTED ATTORNEY.

On application by a person alleging a discriminatory housing practice or by a person against whom such a practice is alleged, the court may appoint an attorney for the person.

## § 5-1-103 [92]      RELIEF.

In an action under this article, an appropriate court, in providing enforcement of this chapter, may:

(1) award to the plaintiff compensatory and punitive damages, where the court finds that a discriminatory housing practice has occurred or is about to occur;

(2) allow reasonable attorney's fees and court costs; and

(3) subject to Section 5-1-104 [5-1-93] (*Effect of Relief Granted*), grant any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in the practice or ordering appropriate affirmative action.

## § 5-1-104 [93]      EFFECT OF RELIEF GRANTED.

Relief granted under this article does not affect a contract, sale, encumbrance, or lease that:

(1) was consummated before the granting of the relief; and

(2) involved a bona fide purchaser, encumbrancer, or tenant who did not have actual notice of the filing of a complaint under this article or a civil action under this article.

## § 5-1-105 [94]      INTERVENTION BY CITY ATTORNEY.

(A) On request of the Equal Employment/Fair Housing Office, [commission] the city attorney may intervene in an action if the Equal Employment/Fair Housing Office [commission] certifies that the case is of general public importance.

(B) The city attorney may obtain the same relief available under Section 5-1-106 [5-1-100] (*Pattern or Practice Cases*).

## § 5-1-106 [100]   PATTERN OR PRACTICE CASES.

(A) On request of the Equal Employment/Fair Housing Office, [commission] the city attorney may file a civil action in district court for appropriate relief if the Equal Employment/Fair Housing Office [commission] has reasonable cause to believe that:

    (1) a person is engaged in a pattern or practice of resistance to the full enjoyment of any right granted by this article; or

    (2) a person has been denied any right granted by this article and that denial raises an issue of general public importance.

(B) In an action under this section the court may:

    (1) award preventive relief, including a permanent or temporary injunction, restraining order, or other order against the person responsible for a violation of this article as necessary to assure the full enjoyment of the rights granted by this article;

    (2) award other appropriate relief, including monetary damages, reasonable attorney's fees, and court costs; and

    (3) to vindicate the public interest, assess a civil penalty against the respondent in an amount that does not exceed:

        (a) $50,000 for a first violation; and

        (b) $100,000 for a second or subsequent violation.

(C) A person may intervene in an action under this section if the person is:

    (1) an aggrieved person to the discriminatory housing practice; or

    (2) a party to a conciliation agreement concerning the discriminatory housing practice.

## § 5-1-107 [101]   SUBPOENA ENFORCEMENT.

The city attorney, on behalf of the Equal Employment/Fair Housing Office [commission or other party at whose request a subpoena is issued under this article], may enforce the subpoena in appropriate proceedings in district court.

§ 5-1-108 [110]    PREVAILING PARTY.

A court in a civil action brought under this article or the commission in an administrative hearing under Section 5-1-85 [5-1-74] (*Administrative Hearing*) may award reasonable attorney's fees to the prevailing party and assess costs against the non-prevailing party.

### Division 6.  Intimidation or Interference Prohibited.

§ 5-1-121 [120]    INTIMIDATION OR INTERFERENCE.

A person commits an offense if the person [he] coerces, intimidates, threatens, or otherwise interferes with a [any] person in the exercise or enjoyment of, or on account of the other [that] person having exercised or enjoyed, or [on account of that person having] aided or encouraged any other person in the exercise or enjoyment of, a [any] right granted or protected by this chapter.

PART 4.  Article 3 (*Discrimination in Housing Based on Other Classifications*) of Chapter 5-1 of the Code is repealed and Article 4 (*Accessibility in Housing Constructed with Public Funds*) is renumbered accordingly.  Sections 5-1-171 through 5-1-176 are renumbered 5-1-131 through 5-1-136 respectively.  Sections 5-1-181 through 5-1-185 are renumbered 5-1-141 through 5-1-145 respectively.

PART 5.  Chapter 5-2 of the Code is amended to read:

## CHAPTER 5-2. DISCRIMINATION IN PUBLIC ACCOMMODATIONS.

§ 5-2-1    DECLARATION OF POLICY.

(A) It is [hereby declared to be] the policy of the City to bring about through fair, orderly and lawful procedures, the opportunity of each person to obtain goods and services in a [all places of] public accommodation without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [and physical or mental] disability.

(B) This [It is further declared that such] policy is established upon a recognition of the inalienable rights of each individual to obtain goods and services in a [all places of] public accommodation without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, age or [and physical or mental disability]; and further that the denial of such rights through considerations based on race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [and physical or mental] disability is detrimental to the health, safety and welfare of the inhabitants of the City and constitutes an unjust denial or deprivation of these [such] inalienable rights

[which is] within the power and the proper responsibility of government to prevent.

§ 5-2-2        **DEFINITIONS.**

In this chapter:

(1)  AGE means a person over the age of 18 years.

(2)  COMMISSION means the Austin Human Rights Commission.

(3)  DIRECTOR means the director of Human Resources Department [or authorized assistant].

(4)  DISABILITY means, with respect to an individual:

    (a)  a physical or mental impairment that substantially limits one or more major life activity of the individual, including caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working;

    (b)  a record of the impairment; or

    (c)  being regarded as having an impairment.

(5)  [(4)] DISCRIMINATION means the [any] direct or indirect exclusion, distinction, segregation, limitation, refusal, denial or any other differentiation in the treatment of a person based on[or persons on account of] race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [and physical or mental] disability in a [all places of] public accommodation.

(6)  EQUAL EMPLOYMENT/FAIR HOUSING OFFICE means the staff of the Human Relations Department that handles complaints under this chapter.

(7)  GENDER IDENTITY means a person's various individual attributes, actual or perceived, that may be in accord with or sometimes opposed to, one's physical anatomy, chromosomal sex, genitalia, or sex assigned at birth.

[(5) MAJOR LIFE ACTIVITIES means functions such as, but not limited to, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.]

[(6) MEMBER means a member of the commission.]

[(7) ~~PHYSICAL or MENTAL DISABILITY means any physical or~~ ~~mental impairment which substantially limits one or more major life~~ ~~activities.~~]

[(8) ~~PHYSICAL or MENTAL IMPAIRMENT includes:~~]

[(a) ~~any physiological disorder or condition, cosmetic disfigurement or~~ ~~anatomical loss affecting one or more of the following body systems:~~ ~~Neurological; musculoskeletal; special sense organs; respiratory,~~ ~~including speech organs; cardiovascular; reproductive; digestive;~~ ~~genitourinary; hemic and lymphatic; skin; and endocrine; or~~]

[(b) ~~any mental or psychological disorder, such as mental retardation,~~ ~~organic brain syndrome, emotional or mental illness, and specific~~ ~~learning disabilities.~~]

(8) [~~(9) PLACE OF~~] PUBLIC ACCOMMODATION means [~~each of the~~ ~~following establishments which serve the public~~]:

(a) an [~~any~~] inn, hotel, motel or other <u>lodging</u> establishment <u>for</u> [~~which~~ ~~provides lodging to~~] transient guests, <u>excluding</u> [~~other than~~] an establishment located <u>in</u> [~~within~~] a building <u>with</u> [~~which contains~~] not more than five rooms for rent or hire and [~~which is actually~~] occupied by the <u>owner or operation as a primary</u> [~~proprietor of such~~ ~~establishment as his~~] residence;

(b) a [~~any~~] restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including a [~~, but not limited to, any~~ ~~such~~] facility located on the premises of a [~~any~~] retail establishment[~~;~~] or a [~~any~~] gasoline station;

(c) <u>a movie theatre</u> [~~any motion picture house~~], theater, concert hall, sports arena, stadium<u>,</u> or other place of exhibition or entertainment;

(d) a [~~any~~] bar, tavern, pub, drinking establishment, or facility where alcoholic beverages are served <u>for consumption on the premises</u>;

(e) <u>a</u> retail <u>establishment that sells</u> [~~establishments selling any kind of~~] goods or services; and

(f) <u>an</u> [~~(i) any~~] establishment [~~which is~~] physically located <u>in</u> [~~within~~] the premises of <u>an</u> [~~any~~] establishment <u>described in</u> [~~otherwise~~ ~~covered by~~] this subsection or <u>containing</u> [~~within the premises of~~ <u>which is physically located</u>] a covered establishment<u>,</u> [~~;~~] and <u>an</u> [~~(ii)~~

any] establishment which holds itself out as serving patrons of a covered establishment.

## § 5-2-3     INTERPRETATION.

In construing this chapter, it is the intent of the city council that the courts shall be guided by Federal Court interpretations of Title VII of the Civil Rights Act of 1964[, as amended].

## § 5-2-4     PROHIBITED PRACTICES.

(A) A person is [All persons shall be] entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a [any place of] public accommodation, without discrimination or segregation based on [the ground of] race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [and physical or mental] disability.

(B) A [It is an unlawful discriminatory act for any] person, including [being] the owner, operator [proprietor], or lessee of a [any place of] public accommodation may not [to] directly or indirectly exclude, segregate, limit, refuse or deny a [to any] person [any of] the accommodations, advantages, facilities, benefits, privileges, services, or goods of the public accommodation [that place] based on [account of] race, color, religion, sex, sexual orientation, gender identification, national origin, age, or [and physical or mental] disability.

(C) A [It is an unlawful discriminatory act for any] person, including [being] the owner, operator [proprietor], or lessee of a [any place of] public accommodation, may not [to] circulate, issue, display, post, mail, or [otherwise to] publish a statement, advertisement, or sign that indicates that [any of] the accommodations, advantages, facilities, benefits, privileges, services, or goods of the public accommodation [that place] will be denied to an [any] individual based on [account of] race, color, religion, sex, sexual orientation, gender identification, national origin, age, or [physical or mental] disability, or that the patronage [of,] or presence [at that place] of an [, any] individual is objectionable, unwelcome, unacceptable, undesirable, or unsolicited based on [account of] race, color, religion, sex, sexual orientation, gender identification, national origin, age or [physical or mental] disability.

## § 5-2-5     COMPLAINT PROCEDURES[FOR VIOLATIONS].

(A) The Equal Employment/Fair Housing Office may take action to [commission is empowered to] prevent a [any] person from engaging in an [any] unlawful public accommodation practice.

(B) <u>A person must file a charge under this chapter within 180 days following the occurrence of the alleged unlawful public accommodation practice.</u>

(C) [(B)]When [Whenever a charge is filed with the commission by] a person [claiming to be aggrieved (hereinafter referred to as the "charging party")] alleging <u>an</u> unlawful public accommodation practice <u>files a charge with the Equal Employment/Fair Housing Office (charging party), the director shall, not later than the 10th day after the charge is received, send</u> [serve a] notice of the charge <u>to the owner, operator, or lessee of the public accomodation (respondent).  Notice under this section shall include</u> [(including] the date, place, and <u>specific</u> circumstances[) with as much specificity as possible] of the alleged unlawful public accommodation practice.[on such owner, proprietor or lessee (hereinafter referred to as the "respondent") within ten days; provided, however, that before any]

(D) <u>Before a</u> charge <u>is</u> [becomes] accepted for investigative purposes<u>,</u> the director or an investigator shall <u>review the charge</u> [have personally reviewed] with the charging party <u>and make a determination that the</u> [the allegations contained therein and shall have determined that said] charge <u>alleges a violation</u> [comes within the provisions] of this chapter. <u>If the preliminary review</u> [In the event such review] results in <u>a</u> [the] determination that <u>the</u> [a particular] charge does not <u>allege a violation</u> [come within the provisions] of this chapter, the charging party shall be given a clear and concise explanation <u>by the director or investigator</u> of the reasons why <u>the charge will not be accepted for investigation.</u> [it does not, and] <u>The charging party</u> may appeal <u>a determination under this section under Section 5-2-6 (Dismissal and Appeal)</u> [such determination in accordance with the procedure set forth in Subsection (D)].

(E) <u>The Equal Employment/Fair Housing Office</u> [Records] shall <u>maintain records that indicate</u> [be maintained indicating] the reason [for which] a charge was not accepted for investigation. [A report of charges accepted shall be compiled by the director and the results and recommendations shall be filed with the commission at such time as the commission directs. A charge under this section must be filed within 180 days following the occurrence of the alleged unlawful public accommodation practice.]

(F) [(C)] <u>A charge filed under this section</u> [Charges] shall be <u>on the form provided by the Equal Employment/Fair Housing Office, and include an</u> [in writing under] oath or affirmation and <u>any other</u> [shall contain such] information <u>required by the office</u>[and be in such form as the commission requires].

## § 5-2-6   DISMISSAL AND APPEAL.

(A)[(D)]  If <u>an</u> [the] investigator determines after investigation that there is not reasonable cause to believe that <u>a</u> [the] charge <u>alleges a violation of this</u>

chapter[is true], the Equal Employment/Fair Housing Office [commission] shall dismiss the charge and promptly notify the charging party and the respondent of its action.

(B) Not later than the 10th day after [Within ten days from the] receipt of a [such] notice of dismissal, the charging party may[, or his attorney, shall] file [with the commission] a request for review with the Equal Employment/Fair Housing Office.  The [and the] commission shall conduct a hearing and provide the charging party [and his attorney] an opportunity to appear to present evidence[before the commission]. Upon conclusion of a [such] hearing, the commission may [by majority vote] affirm, reverse, or modify the finding of the investigator[, as appropriate].

## §5-2-7      INFORMAL RESOLUTION.

(A) [(E)]  If after investigation an investigator determines [it is determined] that there is reasonable cause to believe that a charge alleges a violation of this chapter[is true], the director or a conciliator who has not participated in the [that] investigation[,] shall attempt to resolve the matter through [endeavor to eliminate any such alleged unlawful public accommodation practice by] informal methods, including [of] conference, conciliation, and persuasion.

(B) The Equal Employment/Fair Housing Office, [Nothing said or done in the course of such informal endeavors may be made public by the commission,] the director, the investigator, the conciliator, the charging party, and [or] respondent shall treat the information produced during an informal proceeding as confidential, unless disclosure is required by law. Information produced during an informal proceeding may not [, or] be used as evidence in a later [subsequent] proceeding without the written consent of all parties[persons concerned].

(C) An investigator shall ensure that each determination is [All determinations shall be] reasonable and [be] made as promptly as possible.

(D) A [Should a] respondent may agree to [desire at any time to enter into] a predetermination settlement if [, same shall be allowed provided] the charging party and the director accept the settlement and agree that it meets [such is acceptable and in accordance with] the objectives of this chapter.

## § 5-2-8     REFERRAL.

[(F)]  If the director or conciliator is unable to secure from the respondent an acceptable conciliation agreement after investigation, the Equal Employment/Fair Housing Office shall [commission must upon a majority vote,] refer the case to the city

attorney for <u>appropriate</u> prosecution [~~in municipal court or to other agencies, as~~ ~~appropriate~~].

### § 5-2-<u>9</u> [6]   ACCESS TO RECORDS.

<u>The</u> [~~In connection with any investigation of a charge filed under this chapter, the~~] director or <u>an</u> investigator shall [~~at all reasonable times~~] have access to <u>evidence relating to an investigation under this chapter, and may examine or</u> [~~, for the purposes of~~ ~~examination and the right to~~] copy <u>the</u> [~~, any~~] evidence [~~of any person being investigated~~ ~~or proceeded against that relates to unlawful public accommodation practices and is~~ ~~relevant to the charge under investigation and~~] <u>unless the information is</u> [~~not~~] confidential <u>under applicable</u> [~~as provided by~~] law.

### § 5-2-<u>10</u> [7]   VIOLATIONS.

<u>A</u> [~~No~~] person <u>may not</u> [~~shall~~] violate [~~any provision of~~] this chapter, or knowingly obstruct or prevent compliance with this chapter.

### § 5-2-<u>11</u> [8]   AUTHORITY OF <u>EQUAL EMPLOYMENT/FAIR HOUSING OFFICE</u> [~~COMMISSION TO ESTABLISH, AMEND NECESSARY~~ ~~REGULATIONS~~].

<u>The Equal Employment/Fair Housing Office may adopt</u> [~~commission shall have~~ ~~authority from to time to issue, amend or rescind suitable procedural~~] regulations<u>,</u> <u>including procedural due process,</u> to <u>administer</u> [~~carry out the provisions of~~] this chapter. The <u>Equal Employment/Fair Housing Office shall consult with the</u> city attorney [~~shall be~~ ~~consulted regarding and regulations adopted by the commission~~] before [~~the rules and~~] regulations <u>adopted under this section</u> become effective.  [~~Such rules and regulations~~ ~~shall provide for procedural due process.~~]

### § 5-2-<u>12</u> [9]   LEGAL ASSISTANCE FOR COMMISSION.

The [~~city manager shall instruct the~~] city attorney <u>shall</u> [~~to~~] assign <u>or obtain</u> counsel [~~or to obtain counsel~~] to assist <u>the Equal Employment/Fair Housing Office and</u> the commission in the performance of <u>their</u> [~~its~~] functions [~~and make such other~~ ~~administrative arrangements as are normal and necessary for the functioning the~~ ~~commission~~].

### § 5-2-<u>13</u> [10]   EXEMPTIONS.

(A) <u>This</u> [~~The provisions of this~~] chapter <u>does</u> [~~shall~~] not apply to <u>a facility owned</u> <u>or operated by</u> [~~establishments and facilities of~~] the federal, state<u>, or</u> [~~and~~] county<u> government,</u>[~~governments~~] or [~~of~~] the University of Texas.

(B) <u>This</u> [~~The provisions of this~~] chapter <u>does</u> [~~shall~~] not apply to a private club or other establishment not [~~in fact~~] open to the public, <u>unless</u> [~~except to the extent~~

that] the facilities of the [such] establishment are made available to the customer of a public accommodation [customers or patrons of an establishment within the scope of the definition of "place of public accommodation" as defined in Section 7-2-2 (Definitions)].

**PART 6.** Sections 5-3-1 through 5-3-5 of the Code are amended to read:

**§5-3-1      DECLARATION OF POLICY.**

(A) It is [hereby declared to be] the policy of the city to bring about through fair, orderly and lawful procedures, the opportunity for each person to obtain employment without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability.

(B) This [It is further declared that this] policy is established upon the recognition of the inalienable rights of each individual to work to earn wages and obtain a share of the wealth of this city through gainful employment; and further that the denial of such rights through considerations based upon race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability is detrimental to the health, safety and welfare of the inhabitants of the city and constitutes an unjust denial or deprivation of such inalienable rights which is within the power and the proper responsibility of government to prevent.

**§ 5-3-2      DEFINITIONS.**

In this chapter:

(1) AGE means a person at least [of] 40 years old [or over].

(2) CHARGE means a complaint filed by a charging party alleging discrimination under Section 5-3-4 (*Unlawful Employment Practices*), Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, or Chapter 21 (*Employment Discrimination*) of the Texas Labor Code.

(3) CHARGING PARTY means the person alleging discrimination in a charge.

(4) [(2)] COMMISSION means the Austin Human Rights Commission.

(5) [(3)] DIRECTOR means the director [Director] of Human Resources Department [or his authorized assistant].

(6) DISABILITY, with respect to an individual, means:

(a) <u>a physical or mental impairment that substantially limits one or more of the major life activities of the individual;</u>

(b) <u>a record of the impairment; or</u>

(c) <u>being regarded as having an impairment.</u>

(7) <u>EEOC means the Equal Employment Opportunity Commission.</u>

(8) [(4)] EMPLOYEE means an individual employed by an employer, <u>including a City employee. The term does not include an elected official of the City.</u> [Employee shall not include any person elected to public office of the city by the qualified voters thereof. The employees of the city are included within the scope of this chapter.]

(9) [(5)] EMPLOYER means a person who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and <u>the person's</u> [any] agent. The [of such a person. Such] term does not include the United States, or a corporation wholly owned by the government of the United States; [or] a bona fide private membership club (other than a labor organization) which is exempt from taxation under Section 501(c) of the Internal Revenue Code of 1954; or the state, <u>a state agency, or</u> [agencies thereof and] political subdivision [thereof].

(10) [(6)] EMPLOYMENT AGENCY means a [any] person <u>who</u> regularly <u>attempts,</u> [undertaking] with or without compensation, to procure employees for an employer or to procure <u>employment opportunities</u> for employees, <u>including the person's</u> [opportunities to work for an employer; this term includes an] agent [of such a person].

(11) <u>EQUAL EMPLOYMENT/FAIR HOUSING OFFICE means the office in the Human Resources Department responsible for receiving, investigating, conciliating, making determinations, and taking other action related to charges received under this chapter.</u>

(12) <u>GENDER IDENTITY means a person's various individual attributes, actual or perceived, that may be in accord with or sometimes opposed to, one's physical anatomy, chromosomal sex, genitalia, or sex assigned at birth.</u>

(13) <u>INVESTIGATOR means the person investigating a charge.</u>

(14) [(7)] LABOR ORGANIZATION means a labor organization and <u>its</u> [any] agent, <u>including an</u> [of such an organization, and includes any] organization, [of any kind, any] agency, or employee representation

committee, group, association, or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council [so engaged] which is subordinate to a national or international labor organization.

[(8) PHYSICALLY DISABLED means any physical impairment which substantially limits one or more major life activities.]

[(9) PHYSICAL IMPAIRMENT includes any physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.]

(15) [(10)] RELIGION means all aspects of religious observance and practice, as well as belief, unless an employer demonstrates the inability to reasonably accommodate [to] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

(16) RESPONDENT means the person against whom a charging party alleges discrimination in a charge.

(17) [(11)] SEX DISCRIMINATION means discrimination on the basis of gender, or any associated condition [associated therewith], including [, but not limited to,] pregnancy, childbirth, or related medical conditions. A woman [; and women] affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes, including receipt of benefits under fringe benefit programs, as a person [other persons] not so affected, but similar in their ability or inability to work.

## § 5-3-3    INTERPRETATION AND DESIGNATION.

(A) In construing this chapter, it is the intent of the city council that the courts shall be guided by the rules and regulations of the EEOC [Equal Employment Opportunity Commission] and Federal Court interpretations of Title VII of the Civil Rights Act of 1964[, as amended], the Americans with Disabilities Act, [and where appropriate,] the ["]Age Discrimination in Employment Act of 1967[;" as amended], and Chapter 21 (*Employment Discrimination*) of the Texas Labor Code.

(B) The city council designates the Equal Employment/Fair Housing Office a local commission under Chapter 21 (*Employment Discrimination*) of the Texas Labor Code, to exercise the powers and duties provided in that chapter.

## § 5-3-4     UNLAWFUL EMPLOYMENT PRACTICES.

(A) An [It shall be an unlawful employment practice for an] employer may not [to]:

   (1) fail [Fail] or refuse to hire or to discharge any individual, or otherwise [to] discriminate against an [any] individual with respect to compensation, terms, conditions, or privileges of employment, based on the [because of such] individual's race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability; or

   (2) limit [Limit], segregate, or classify an employee or applicant [employees or applicants] for employment in a [any] way which would deprive or tend to deprive an [any] individual of employment opportunities or otherwise adversely affect the individual's status as an employee, based on the [because of such] individual's race, color, religion, sex, sexual orientation, gender identify, national origin, age, or [physical] disability.

(B) An [It shall be an unlawful employment practice for an] employment agency may not [to]:

   (1) fail or refuse to refer for employment, or otherwise [to] discriminate against, an [any] individual based on [because of] race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability; [,] or [to]

   (2) classify or refer for employment an [any] individual based on [the basis of] race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability.

(C) A [It shall be an unlawful employment practice for a] labor organization may not [to]:

   (1) exclude [Exclude] or to expel from its membership, or otherwise [to] discriminate against, an [any] individual based on [because of] race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability; [.]

   (2) limit [Limit], segregate, or classify its membership, or applicants for membership, or [to] classify or fail or refuse to refer for employment an [any] individual in a [any] way which would deprive or tend to deprive the [any] individual of employment opportunities, [or would] limit [such]

employment opportunities, or otherwise adversely affect the individual's [his] status as an employee or as an applicant for employment, based on the [because of such] individual's race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability; or [.]

   (3) cause [Cause] or attempt to cause an employer to discriminate against an individual in violation of this section.

(D) An [It shall be an unlawful employment practice for any] employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, may not [to] discriminate against an [any] individual based on [because of] race, color, religion, sex, sexual orientation, gender identity, national origin, age, or [physical] disability in admission to[,] or employment in a [, any] program established to provide apprenticeship or other training.

(E) Unless it is a *bona fide* occupational qualification for employment, an [It shall be an unlawful employment practice for an] employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, may not [to] print, [or] publish, or cause to be printed or published a [any] notice or advertisement that indicates a preference, limitation, specification, or discrimination based on race, color, religion, sex, sexual orientation, gender identity, national origin, age, or disability related [relating] to:

   (1) employment by the [such an] employer; [or]

   (2) membership in or [any] classification or referral for employment by [such] an employment agency; [,] or

   (3) [relating to] admission to, or employment in, a [any] program established to provide apprenticeship or other training by [such] a joint labor-management committee [indicating any preference, limitation, specification, or discrimination based on race, color, religion, sex, sexual orientation, national origin, age or physical disability except that such a notice or advertisement may indicate a preference, limitation, specification or discrimination based on religion, sex, sexual orientation, national origin, age or physical disability when religion, sex, sexual orientation, national origin, age or physical disability is a bona fide occupational qualification for employment].

(F) <u>Based on an individual's opposition to an unlawful employment practice or the individual's filing a charge, or testimony, assistance, or participation in an investigation, proceeding or hearing under this chapter:</u>

(1) [It shall be an unlawful employment practice for] an employer <u>may not</u> [to] discriminate against <u>an</u> [any] employee or applicant for employment<u>;</u> [, for]

(2) an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, <u>may not</u> [to] discriminate against <u>an</u> [any] individual<u>; and</u> [, or for]

(3) a labor organization <u>may not</u> [to] discriminate against <u>a</u> [any] member [thereof] or applicant for membership [, because the individual has opposed any practice, made an unlawful employment practice by this chapter, or because the individual has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter].

## § 5-3-5   VIOLATIONS PROHIBITED.

<u>A</u> [No] person <u>may not</u> [shall] violate [any provision of] this chapter, or knowingly obstruct or prevent compliance with this chapter.

**PART 7.** Sections 5-3-6 through 5-3-9 are repealed and replaced with new Sections 5-3-6 through 5-3-14 to read:

## § 5-3-6   CHARGES.

(A) A person must file a charge with the Equal Employment/Fair Housing Office not later than the 180th day after the date the violation occurred.

(B) A charge under this section must be:

(1) made in writing on the form prescribed by the Equal Employment/Fair Housing Office;

(2) be sworn to by the charging party; and

(3) contain the information required by the Equal Employment/Fair Housing Office.

§ 5-3-7    PRELIMINARY REVIEW; REFUSAL.

(A) Before the Equal Employment/Fair Housing Office accepts a charge, an investigator shall review the charge with the charging party and make a determination that the charge describes a violation of Section 5-3-4 (*Unlawful Employment Practices*), Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act or the Americans with Disabilities Act of 1990, or Chapter 21 (*Employment Discrimination*) of the Texas Labor Code.

(B) If, after a preliminary review, an investigator determines that a charge does not describe a violation of Section 5-3-4 (*Unlawful Employment Practices*) or of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, or Chapter 21 (*Employment Discrimination*) of the Texas Labor Code the Equal Employment/Fair Housing Office shall notify the charging party that the charge will not be accepted and describe the reason for the refusal, not later than the 10th day after the determination. The Equal Employment/Fair Housing Office shall maintain a record documenting the reason a charge was not accepted.

§ 5-3-8    ACCEPTANCE; NOTICE; INVESTIGATION.

If the Equal Employment/Fair Housing Office accepts a charge, it shall notify the respondent not later than the 10th day after acceptance of the charge.  If the charge alleges a violation of Section 5-3-4 (*Unlawful Employment Practices*), the Equal Employment/Fair Housing Office shall initiate an investigation.

§ 5-3-9    NO REASONABLE CAUSE DETERMINATION.

If, after an investigation, an investigator determines that there is no reasonable cause to believe that a charge is true, the Equal Employment/Fair Housing Office shall issue a determination explaining why there was no reasonable cause to believe a violation had occurred and shall immediately notify the charging party and the respondent of the determination.

§ 5-3-10    REVIEW OF NO REASONABLE CAUSE DETERMINATION BY COMMISSION.

(A) A charging party may file with the director a request for review by the Commission of a no reasonable cause determination issued under a charge filed alleging a violation of Section 5-3-4 (*Unlawful Employment Practices*). This request must be filed not later than the 10th day after receipt of the notice

of the issuance of a no reasonable cause determination under Section 5-3-9 (*Determination*).

(B) For charges filed exclusively under Section 5-3-6 (*Charges*) and not deferred by the EEOC pursuant to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, or Chapter 21 (*Employment Discrimination*) of the Texas Labor Code, if the charging party files a request for review, the Commission, after review, may conduct a hearing and consider evidence presented by the charging party, the respondent, and the Equal Employment/Fair Housing Office. The Commission shall conduct a hearing as prescribed by the Chapter 2001 (*Administrative Procedure Act*) of the Texas Government Code. At the conclusion of the hearing, the Commission may, by majority vote, affirm, reverse, or modify the determination of the Equal Employment/Fair Housing Office.

## § 5-3-11    REVIEW OF NO REASONABLE CAUSE DETERMINATION BY EEOC.

A charging party may file with the EEOC an appeal of a no reasonable cause determination issued under a charge filed alleging a violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, or the Americans with Disabilities Act of 1990.

## § 5-3-12    CONCILIATION AGREEMENT.

(A) If, after investigation of the charge or review by the Commission, it is determined that there is reasonable cause to believe a violation of Section 5-3-4 (*Unlawful Employment Practices*) or a violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act,  the Americans with Disabilities Act of 1990, or Chapter 21 (*Employment Discrimination*) of the Texas Labor Code has occurred, the Equal Employment/Fair Housing Office shall attempt to resolve the alleged violation through a conciliation agreement.

(B) A respondent may enter into a settlement at any time before a determination is made by the Equal Employment/Fair Housing Office, if the Equal Employment/Fair Housing Office agrees that the settlement is acceptable and complies with the objectives of this chapter.

(C) The Equal Employment/Fair Housing Office, investigator, charging party, and respondent shall treat as confidential any written or oral communications or documentation prepared during the course of attempting to reach a conciliation agreement or predetermination settlement, unless disclosure is required by law, and may not use this information as evidence in a subsequent proceeding without the written consent of all parties.

(D) If the Equal Employment/Fair Housing Office is unable to obtain a conciliation agreement acceptable to the Equal Employment/Fair Housing Office and the charging party, the Equal Employment/Fair Housing Office may refer a case involving a violation of Section 5-3-4 (*Unlawful Employment Practices*) to the city attorney for prosecution in municipal court or for other civil prosecution as authorized by Chapter 21 (*Employment Discrimination*) of the Texas Labor Code.  Prosecution in municipal court or by other civil action does not bar the charging party from seeking relief from the EEOC or other civil proceeding.

(E) If no conciliation agreement acceptable to the charging party and the Equal Employment/Fair Housing Office is reached in a case involving a violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, or the Americans with Disabilities Act of 1990, the Equal Employment/Fair Housing Office shall send a failure to conciliate letter to the charging party and the respondent and forward the charge to the EEOC for their review.

(F) The confidentiality rules in 29 CFR §1601.22 apply in all cases deferred to the City by the EEOC.

## § 5-3-13    INVESTIGATIVE ACCESS TO RECORDS AND EVIDENCE.

In investigating a charge filed under this chapter, the Equal Employment/Fair Housing Office shall have access to, and may examine and copy, records or other evidence maintained by a respondent that the office believes is relevant to a charge under investigation.

## § 5-3-14    LEGAL ASSISTANCE.

The city attorney shall advise the Equal Employment/Fair Housing Office or the Commission relating to the administration and enforcement of this chapter.

**PART 7.**   Section 7-3-10 is renumbered as Section 7-3-15 and amended to read:

## § 5-3-15 [10]    EXEMPTIONS.

[Notwithstanding any other provision of this chapter:]

(A) If an individual's religion, sex, sexual orientation, gender identity, national origin, age, or disability are a bona fide occupational qualification reasonably necessary for the normal operation of a particular business or enterprise, it is [It shall] not [be] an unlawful employment practice for:

   (1) an employer to hire and employ employees; [, for]

(2) an employment agency to classify, or refer for employment an [any] individual; [, for]

(3) a labor organization to classify its membership or to classify or refer for employment an [any] individual; [,] or [for]

(4) an employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ an [any] individual in a [any such] program [, on the basis of religion, sex, sexual orientation, national origin, age, or physical disability in those certain instances where religion, sex, sexual orientation, national origin, age or physical disability is a bona fide occupational qualification reasonably necessary for the normal operation of that particular business or enterprise].

(B) It is [shall] not [be] an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if:

    (1) the [such] school, college or university, or other educational institution or institution of learning is wholly or substantially [, in whole, or in substantial part,] owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society; [,] or

    (2) [if] the curriculum of the [such] school, college, university, or other educational institution, or institution of learning is directed toward the propagation of a particular religion.

(C) It is [shall] not [be] an unlawful employment practice for a religious corporation, association, educational institution, or society to hire and employ individuals of a particular religion to perform work connected with the activities of the [carrying on by such] corporation, association, educational institution, or society [of its activities].

(D) If it is not caused by an employer's intentional discrimination based on an employee's race, color, sex, sexual orientation, gender identity, religion, national origin, age, or disability, it is [It shall] not [be] an unlawful practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment based on: [pursuant to]

    (1) a *bona fide* seniority or merit system; [, or]

    (2) a system which measures earnings by quantity or quality of production; [,] or [;]

(3) to employees who work in different locations [, provided that such differences are not the result of an intention to discriminate because of race, color, sex, sexual orientation, religion, national origin, age or physical disability].

**PART 8.**   This ordinance takes effect on June 21, 2004.

**PASSED AND APPROVED**

_____ June 10 _____, 2004

§
§
§

_____
Will Wynn
Mayor

**APPROVED:** _____
David Allan Smith
City Attorney

**ATTEST:** _____
Shirley A. Brown
City Clerk